## S02A0794. JOHNSON v. THE STATE.
(571 SE2d 782)

BENHAM, Justice.

This appeal is from Antonio Singleton Johnson's convictions for felony murder and possession of a firearm during commission of a crime.[1] The evidence at trial established that after Johnson and his co-defendant Javari Brown and two other companions gathered on the evening of the shooting involved in this case, Johnson returned to his home and obtained a .22 caliber rifle and ammunition, both of which he gave to Brown who loaded the rifle and secreted it in his clothes. The four men then walked through the neighborhood, stopping eventually at the home of the victim, Tara Wimberly. Johnson told the others he wanted to stop there and "ask the lady about his money." Accompanied to the door by Brown, who took the gun from his clothing and held it behind his back, Johnson asked Ms. Wimberly for the money she owed him. Brown took issue with Ms. Wimberly's statement that she did not have the money, and when Ms.

---

[7] See *Hanson v. First State Bank &c. Co.,* 259 Ga. 710, 714 (385 SE2d 266) (1989).

[1] The shooting occurred on April 30, 1995, and Johnson was indicted along with Javari Brown on June 13, 1995, for malice murder, felony murder (aggravated assault), aggravated assault, and possession of a firearm during commission of a crime. Johnson and Brown were tried together on April 2-4, 1996, at the conclusion of which the jury found Johnson guilty of felony murder and possession of a firearm during commission of a crime, and convicted Brown on all counts of the indictment. On April 25, 1996, the trial court sentenced Johnson to life imprisonment for murder and to a consecutive term of five years for the firearm possession count. Johnson's motion for new trial, filed on May 15, 1996, was denied on November 2, 2000. The appeal was docketed in this Court on February 8, 2002, and was submitted for decision on the briefs.

Wimberly told Brown that the conversation was between her and Johnson, Brown shot her twice, once in the head and once in the back, killing her. Johnson and the other two ran when Brown fired the rifle. Ms. Wimberly's husband successfully fought Brown for possession of the weapon, during which struggle he saw a man come toward him from the direction in which Johnson had fled. Mr. Wimberly then shot at a man he saw running away in the direction in which Brown was seen to flee. Brown later sought medical care for a gunshot wound to his back. Mr. Wimberly identified a photograph of Johnson as the person who sought money from Ms. Wimberly. A search of Johnson's room produced a rifle cleaning kit, some .22 caliber cartridge cases, and ammunition for another weapon. In a statement to police, one of the other two companions said he was with Johnson and Brown when they stopped to collect some money, that the person they spoke to "got smart" with Brown, that Brown shot her, and that everyone ran, Brown to the right, everyone else to the left.

1. The evidence adduced at trial was sufficient to find Johnson guilty beyond a reasonable doubt of felony murder (aggravated assault) and possession of a firearm during commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Burks v. State*, 268 Ga. 504 (491 SE2d 368) (1997).

2. Johnson and Brown moved to sever their trials on the ground that the use of each other's custodial statements would violate *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968). Upon the State's assurance that it did not intend to introduce those statements, the trial court denied the motions to sever. Johnson now contends that the trial court erred in failing to sever the trials, but that the error did not occur when the motions were denied. Instead, he contends, the trial court erred by not ordering severance sua sponte later in the trial when the State introduced a non-custodial statement made by Brown while he was in the hospital after receiving treatment for a gunshot wound.

"It was not incumbent upon the trial court to order a severance sua sponte. [Cits.]" *Callendar v. State*, 275 Ga. 115, 116 (2) (561 SE2d 113) (2002). Second, the asserted basis for severance, a *Bruton* violation, was not viable for two reasons. "*Bruton* is not violated if a co-defendant's statement does not incriminate the defendant on its face. . . ." *Moss v. State*, 275 Ga. 96, 98 (2) (561 SE2d 382) (2002). *Bruton* is not applicable to a statement which "is not the custodial confession of a non-testifying accomplice which details the criminal participation of" a co-defendant. *Reid v. State*, 210 Ga. App. 783 (3) (a) (437 SE2d 646) (1993). Brown's statement was non-custodial and did not incriminate anyone, consisting only of a fictitious account of how Brown received a gunshot wound, an account that placed the

event elsewhere and included no reference to Johnson. No error appears in the trial court's failure to sever the trials.

3. The trial court granted the State's motion in limine to exclude testimony and argument to the jury relating to the presence of cocaine metabolites in Ms. Wimberly's blood. Johnson enumerates that ruling as error, contending that it improperly curtailed his right to a searching cross-examination. Since there was no claim by the defense that Ms. Wimberly's behavior on the night in question led to her shooting, we agree with the trial court's ruling that the presence of cocaine in her blood was not relevant and find no abuse of discretion in the grant of the State's motion. See *James v. State*, 270 Ga. 675 (2) (513 SE2d 207) (1999); *Hawes v. State*, 261 Ga. 164 (4) (402 SE2d 714) (1991).

4. The trial court also granted the State's motion in limine to forbid comment by the defense during argument to the jury on the fact that the State did not call all the witnesses on the list of witnesses it provided to the defense. On appeal, Johnson argues that since the trial court based its decision on *Wilson v. Zant*, 249 Ga. 373 (4) (290 SE2d 442) (1982), and since the pertinent holding in that case was disapproved in *Morgan v. State*, 267 Ga. 203 (3) (476 SE2d 747) (1996), the grant of the motion in limine was error. However, the holding in *Morgan* was that "it is proper for opposing counsel to draw an inference of fact from such failure and comment on the failure to the jury when there is competent evidence before the jury that the missing witness has knowledge of material and relevant facts." Id. at 205. Since there was no evidence before the jury in the present case that any witnesses not called by the State had knowledge of material and relevant facts, the defense would not have been entitled under *Morgan* to make the argument the trial court forbade. That being so, we conclude there was no error in the trial court's grant of the motion in limine.

5. Johnson enumerates as error the trial court's denial of a motion to continue the trial. "Whether to grant a motion for continuance is entirely within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. [Cit.]" *Greene v. State*, 274 Ga. 220 (3) (552 SE2d 834) (2001). The basis for the motion was the fact that the jury pool for the trial in the present case was the same pool from which a jury had been chosen the preceding week for the trial on unrelated charges of one of Johnson's companions who was present when Ms. Wimberly was shot. Johnson argues that since the jury pool had been exposed to voir dire questions at his companion's trial for violent offenses, there might be a "spillover" effect that would prejudice Johnson. However, no showing was made concerning the questions asked at that earlier voir dire or any other possible basis for concluding that the jurors might be prejudiced against

Johnson. Under those circumstances, we find no abuse of discretion in the trial court's denial of the continuance. See *Tubman v. State*, 185 Ga. App. 731 (1) (365 SE2d 879) (1988).

6. During the trial, defense counsel requested that the trial court inquire of the jury whether any juror saw a news broadcast which incorrectly stated that Ms. Wimberly was pregnant when she was killed. The trial court refused to make the inquiry, pointing out that it had instructed the jurors to avoid news reports concerning the case, but offered to give instructions to disregard any information not obtained in court. Defense counsel declined the instructions and Johnson now contends that the trial court's refusal to inquire of the jurors was reversible error.

What defense counsel requested in this case is analogous to voir dire in that such an inquiry would be aimed at discovering any bias or inclination jurors might have formed because of outside influences.

> The single purpose for voir dire is the ascertainment of the impartiality of jurors, their ability to treat the cause on the merits with objectivity and freedom from bias and prior inclination. The control of the pursuit of such determination is within the sound legal discretion of the trial court, and only in the event of manifest abuse will it be upset upon review.

*Edmonds v. State*, 275 Ga. 450 (569 SE2d 530) (2002). Given the fact that the trial court had instructed the jurors not to read or watch news of the case, that evidence was placed before the jury that Ms. Wimberly was not pregnant, and that the trial court instructed the jury to make its decision based only on the evidence presented at trial, we conclude that the trial court did not manifestly abuse its discretion.

7. Johnson's complaint regarding the admission of a photograph showing the gunshot wound to Ms. Wimberly's head is without merit. The photo of which he complains was the only crime scene photo which showed that wound. "[P]hotos . . . which depict the location and nature of the victim's wounds are admissible because they are relevant and material. [Cits.]" *Rucker v. State*, 270 Ga. 431 (4) (510 SE2d 816) (1999).

8. Johnson contends that his trial counsel was ineffective in failing to preserve for appeal objections to two parts of the jury charge, one on conspiracy, the other on the principle that presence, companionship, and conduct before and after an offense are circumstances from which one's participation in the criminal intent may be inferred. If the charge given was not erroneous, counsel's failure to object to it

is not deficient performance (*Nickerson v. State*, 248 Ga. App. 829 (2) (d) (545 SE2d 587) (2001)), so we look first at the question of the correctness of the instructions.

Johnson's basis for arguing that the instruction on conspiracy was error is his contention that the evidence did not support a finding that a conspiracy existed. "The agreement that forms the basis of a conspiracy may be a tacit understanding between conspirators. [Cits.]" *Avery v. State*, 269 Ga. 584 (2) (502 SE2d 230) (1998). The evidence that Johnson supplied the murder weapon and ammunition to Brown, that Brown accompanied him to the Wimberlys' door, that Brown participated in Johnson's demand for money, and that Johnson attempted to assist Brown when Mr. Wimberly was wresting the rifle away from him was evidence of the existence of a tacit agreement to use deadly force, if necessary, to collect the debt from Ms. Wimberly. See *Duffy v. State*, 262 Ga. 249 (1) (416 SE2d 734) (1992).

Johnson's argument regarding the charge on inferring participation in criminal intent from presence, companionship, and conduct is that it negated the instruction that mere presence at the scene of a crime, without more, will not authorize a finding of guilt. The charges are not contradictory, but complementary, and are often stated together as a single principle of law: "While mere presence at the scene of the commission of a crime is not sufficient evidence to convict one of being a party thereto, presence, companionship, and conduct before and after the offense are circumstances from which one's participation in the criminal intent may be inferred." *Peppers v. State*, 242 Ga. App. 416 (1) (530 SE2d 34) (2000). The charge was a correct statement of law and was not subject to the criticism offered by Johnson.

Since the charges complained of were not subject to the objections Johnson contends trial counsel was deficient in failing to preserve, the lack of objection does not show ineffective assistance of counsel. *Nickerson v. State*, supra.

*Judgment affirmed. All the Justices concur.*

DECIDED OCTOBER 28, 2002.

*Ellis R. Garnett*, for appellant.

*Daniel J. Craig, District Attorney, Thurbert E. Baker, Attorney General, Madonna M. Heinemeyer, Assistant Attorney General*, for appellee.