S04A2031, S04X2032. FORSYTH COUNTY et al. v. MARTIN et al.; and vice versa.

(610 SE2d 512)

BENHAM, Justice.

This case revolves around the legal effect of the property interests of lakefront property owners on the decision whether to breach or to repair the earthen dam that impounds the lake, as ordered by the Environmental Protection Division of the Georgia Department of Natural Resources, acting pursuant to the Georgia Safe Dams Act, OCGA § 12-5-370 et seq. Forsyth County appeals the judgment entered against it in a lawsuit brought by the lakefront homeowners in which the trial court directed a verdict that Forsyth County owned the earthen dam, and the jury, given the choice of requiring the County to repair the dam or to breach the dam, returned a verdict requiring the County to repair the dam.

The earthen dam was built several decades ago by a private entity in order to create a 21-acre lake which the developer bordered with residential homesites that were sold pursuant to a subdivision plat showing the lake area. After the earthen dam was built, Forsyth County paved a road across the top of it in the mid-1970s. In 1998, the Environmental Protection Division (EPD) sent notice of the dam's reclassification to "high-hazard" status to the county as a "partial owner of the dam."[1] In 2002, the EPD director, concerned the dam was in danger of sudden and complete failure, directed the dam's owners

---

[1] Plaintiffs Roger and Karen Martin, Sawnee Lake F. & B. D., Inc. (a corporation that was administratively dissolved in 1988 by the Office of the Georgia Secretary of State), and Lynwood Jordan, one of the lakeside property owners, were also determined by the EPD to be partial owners of the dam under the Safe Dams Act.

to lower the lake level by ten feet, decide whether to breach or repair the dam, and submit plans to EPD pursuant to the owners' decision to breach or to repair the dam. The County took immediate emergency action to alleviate the danger by digging a trench perpendicular to the dam across the county's road, which allowed the level of the lake to be reduced, and closed the county road. Those designated as owners of the dam appealed the EPD order to an administrative law judge who concluded the EPD had established that the County was an owner of the dam.[2] The County appealed the ALJ's decision to superior court which affirmed the decision in an order filed January 16, 2003.

In February 2002, a month after the trench across the dam was dug and the road closed, the lakefront homeowners filed the instant action in which they sought, among other things, a declaratory judgment that the County owned the dam and a writ of mandamus ordering the County to assume ownership, repair, and maintenance of the dam. After the superior court affirmed the ALJ's decision finding the County to be an "owner" of the dam under the Safe Dams Act, the County filed in the instant action a counterclaim and cross-claim for declaratory judgment to determine the County's rights and obligations with respect to the homeowners should the County breach the dam pursuant to the EPD order.[3] At the close of the evidence, the trial court directed a verdict against the County with regard to ownership of the dam and submitted to the jury the question of whether the County should be required to repair the dam or be permitted to breach the dam. Following the jury's verdict that the dam should be repaired, the superior court issued a judgment in which it ordered the County to "rebuild and repair Pine Lake Dam in accordance with current EPD requirements so that the Dam will impound a lake with an elevation, at normal pool, of 1140 MSL and will impound a lake of approximately 21+/-acres." The County was also ordered to pay nearly $79,000 to the lakefront homeowners for the expenses of litigation, including attorney fees. The County appeals, contending the trial court erred in directing a verdict on the question of the ownership of the dam, in making several evidentiary rulings, and in ordering the County to pay appellees' expenses of

---

[2] The ALJ ruled that the EPD had established that the County and Lynwood Jordan were "owners" of the dam and that Sawnee Lake F. & B. D., Inc. was an administratively dissolved corporation. The ALJ granted summary judgment to Roger and Karen Martin on the issue of their purported partial ownership of the dam.

[3] The County sought a declaration that breaching the dam would be an act done pursuant to the County's police powers and that breach of the dam as an exercise of the County's police powers would not subject the County to liability from the plaintiffs or Jordan, the homeowner who was also the cross-claim defendant, under theories of inverse condemnation, nuisance, or any other theory of liability.

litigation. The homeowners have filed a cross-appeal in which they contend the judgment of the trial court requiring an impounded pool with an elevation of 1140 feet MSL ("mean sea level") does not conform to the jury verdict which they allege requires the dam to impound a pool with an elevation of 1141 feet MSL.

1. The County unsuccessfully sought a directed verdict on plaintiffs' claims for declaratory judgment, mandamus, and injunctive relief. Asserting the County is not the fee simple owner of the dam, it has no legal duty to repair the dam, and it is the lakefront homeowners who have the duty to repair their claimed easement, the County contends on appeal the trial court erred when it denied the County's motion for directed verdict and directed a verdict against the County on its counterclaim and cross-claim for declaratory judgment.

The issue in this case is not the ownership of the earthen dam in the usual sense of fee simple title ownership of real property. In the administrative action, the EPD determined that the condition of the dam was such that it "may cause the sudden and complete failure of the Dam" and ordered those found to be the dam "owners" under the Safe Dams Act to repair or to breach the dam. The issue of the County's ownership of the dam under the Safe Dams Act was litigated in the appeal of the administrative order, and the County was determined to be an "owner" of the dam for purposes of complying with the EPD order to repair or to breach the dam. In the case at bar, the issue presented was what effect the plaintiffs' ownership of property adjacent to the lake formed by the dam had on whether to repair or to breach the dam, as required by the EPD order. The trial court correctly directed a verdict against the County on the issue of ownership because the issue of the County's ownership interest requiring compliance with the EPD order was resolved against the County in the earlier administrative action and judicial appeals thereof.

As for the issue of the effect of the plaintiffs' ownership of lakefront property on the decision whether to breach or repair the dam, the plaintiffs established they purchased their lots according to a subdivision plat which had a lake area designated on it and paid more for their lakefront lots than the purchase price for non-lakefront lots, thereby acquiring an irrevocable easement in the lake. *Walker v. Duncan*, 236 Ga. 331 (223 SE2d 675) (1976). See also *Higgins v. Odom*, 246 Ga. 309 (271 SE2d 211) (1980); *Patterson v. Powell*, 257 Ga. App. 336 (571 SE2d 400) (2002). The homeowners' interest in the lake limited the legal ability of the County, as owner of the dam under the Safe Dams Act, to breach the dam. See *Dillard v. Bishop Eddie Long Ministries*, 258 Ga. App. 507 (3) (574 SE2d 544) (2002). The County's contention that the homeowners' irrevocable interest in the lake necessarily extends to the dam and with that extension comes a

duty on the part of the homeowners to repair the dam, suggests the homeowners have an ownership interest in the dam under the Safe Dams Act. However, even if the homeowners' irrevocable easement in the lake extends to the dam, the issue in the case at bar was not whether there are additional entities with an ownership in the dam under the Safe Dams Act,[4] but whether the homeowners' interest in the lake limited the options presented by the EPD to the parties the EPD had designated as having ownership interests in the dam that required them to take the action mandated by the EPD administrative order issued pursuant to the Safe Dams Act. Accordingly, the trial court did not err when it directed a verdict against the County on the plaintiffs' claims for declaratory judgment, mandamus, and injunctive relief.

Lastly, the trial court did not commit reversible error when it denied a directed verdict to the County on its counterclaim and cross-claim for declaratory judgment. Since the jury was not asked to decide issues of inverse condemnation, nuisance, or other claims of County liability for damages purportedly caused when the County dug a trench across the dam in response to the EPD's demand for immediate action due to the danger the dam posed, the County was not harmed by the denial of a directed verdict.

2. The jury awarded plaintiffs $78,899.28 as expenses of litigation and attorney fees after finding the County had caused the plaintiffs unnecessary trouble and expense, but had not been stubbornly litigious or acted in bad faith.[5] See OCGA § 13-6-11. On appeal, the County contends public policy should prevent counties from being subject to damages under OCGA § 13-6-11, the trial court erroneously denied the County's motion for directed verdict on the issue since there was a bona fide controversy, and the evidence did not support the monetary award.

(a) Citing this Court's decision in *MARTA v. Boswell*, 261 Ga. 427 (405 SE2d 869) (1991), involving an award of punitive damages, the County maintains that counties should not be subject to an award of

---

[4] In its order affirming the EPD Director's administrative order addressed to the County as an owner of the dam under the Safe Dams Act, the ALJ noted the EPD Director

is not required to bring an action against all possible owners of a dam in order to hold any single owner to the standards set forth in the Act and the Dam Rules. [Cit.] The question in this case, therefore, is not whether the Director has issued an Administrative Order to ALL possible owners of the dam, but rather whether the entities to whom the Director has issued an Administrative Order have any ownership interests in the dam thus subjecting them to regulation by EPD.

[5] On the verdict form, the jury placed a check mark by "Has caused the plaintiff unnecessary trouble and expense," and drew lines through "Acted in bad faith" and "Has been stubbornly litigious," acting in accordance with the trial court's instruction to "put a check by that one that is there that you find, and mark through any that you don't find."

litigation expenses made pursuant to OCGA § 13-6-11 since governmental entities are not subject to awards designed to penalize or punish. The County misapprehends the purpose of an award of litigation expenses and attorney fees — it is not intended to penalize or punish, but to compensate an injured party for the costs incurred as a result of having to seek legal redress for the injured party's legitimate grievance. *City of Warner Robins v. Holt*, 220 Ga. App. 794 (1) (b) (470 SE2d 238) (1996). We decline to adopt the County's position that a governmental entity cannot be subject to an award of litigation expenses and attorney fees under OCGA § 13-6-11. See *Eastern Air Lines v. Fulton County*, 183 Ga. App. 891 (4) (360 SE2d 425) (1987).

(b) Expenses of litigation and attorney fees may be awarded pursuant to OCGA § 13-6-11 if the factfinder determines the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense. "Questions concerning bad faith, stubborn litigiousness, and unnecessary trouble and expense under OCGA § 13-6-11 are generally questions for the jury to decide." *American Med. Trans. Group v. Glo-An*, 235 Ga. App. 464, 467 (3) (509 SE2d 738) (1998). The County sought a directed verdict on the issue of litigation expenses and attorney fees, contending there was no evidence of bad faith or stubborn litigiousness and there was a reasonable dispute concerning the dam's ownership and any obligations the lake easement holders might have in conjunction with the dam's upkeep. As Division 1 makes clear, there was not a viable issue of the County's ownership interest in the dam under the Safe Dams Act in this trial since that issue was resolved in the administrative action. In denying the County's motion for directed verdict on the issue of attorney fees and expenses of litigation, the trial court opined the jury could find the County had been stubbornly litigious in its efforts to re-litigate the issue of its ownership interest in the dam. Inasmuch as there was evidence from which the jury could have concluded the County's actions fell within OCGA § 13-6-11, the trial court did not err when it denied the County's motion for directed verdict. *Assaf v. Coker*, 157 Ga. App. 432 (5) (278 SE2d 82) (1981).

(c) As stated previously, the jury awarded attorney fees and expenses of litigation to plaintiffs after finding the County had caused them unnecessary trouble and expense. When an award of expenses of litigation and attorney fees is factually supportable, the amount of the award is limited to "the amount of attorney fees attributable solely to the claim in which [plaintiffs] prevailed. . . ." *United Cos. Lending Corp. v. Peacock*, 267 Ga. 145, 147 (2) (475 SE2d 601) (1996); *St. Paul Fire &c. Ins. Co. v. Clark*, 255 Ga. App. 14 (5) (a) (566 SE2d 2) (2002). The trial court directed verdicts in favor of the

County on all of plaintiff Charles Wester's claims and on all plaintiffs' claims for punitive damages, as well as on all plaintiffs' claims for damages based on inverse condemnation and nuisance. Through the testimony of their attorney, plaintiffs presented the attorney's itemized bill of $58,899.28 that ran from January 28, 2002, when the attorney was first contacted by the clients, through the week before trial in mid-April 2004. It did not include the attorney's time spent in trial or in pre-trial preparation, and the attorney estimated the bill for the trial to be $20,000 (five days of trial at $4,000/day). Neither the testimony nor the evidence distinguished the attorney fees and costs expended on the claims on which the plaintiffs prevailed from those which were decided adversely to plaintiffs. Accordingly, we vacate the award and remand the case to the trial court with direction to conduct a hearing on the award of expenses of litigation and attorney fees and limit the award to the amount attributable to the claims on which plaintiffs prevailed. *United Cos. Lending Corp. v. Peacock*, supra, 267 Ga. 145 (2); *St. Paul Fire &c. Ins. Co. v. Clark*, supra, 255 Ga. App. 14 (5) (a). See also *R. T. Patterson Funeral Home v. Head*, 215 Ga. App. 578 (5) (451 SE2d 812) (1994) (failure of defendant to cross-examine plaintiffs' counsel with regard to distinguishing fees charged on various theories of liability when plaintiffs did not prevail on all theories did not affect appellate court's decision to reverse the award and remand it to the trial court for an evidentiary hearing).

(d) Plaintiffs assert remand is not necessary because this Court determined in *Jennings v. McIntosh County Bd. of Commrs.*, 276 Ga. 842 (583 SE2d 839) (2003), that a party is entitled to all fees in a mandamus action even though the party did not receive all the relief sought. However, the attorney fees at issue in *Jennings* were not awarded pursuant to OCGA § 13-6-11, but pursuant to this Court's decision in *Gwinnett County v. Yates*, 265 Ga. 504 (2) (458 SE2d 791) (1995), that a trial court may require a county to pay the reasonable attorney fees incurred by a successful county official who was not represented by the county attorney due to a conflict of interest. See also OCGA § 45-9-21 (e) (2). Jennings's request for attorney fees pursuant to OCGA § 13-6-11 was not addressed. *Jennings v. McIntosh Bd. of Commrs.*, 276 Ga. at 847, n. 7. Inasmuch as plaintiffs are not county officials who were entitled to representation by the county attorney but could not be represented by the county attorney due to a conflict of interest, they cannot rely on this Court's holding in *Jennings*.

3. The County maintains the trial court erred when it denied the County's motion in limine concerning the admission of the EPD order and the rulings of the ALJ and the superior court in the County's appeals thereof, and compounded the error when it admitted the documents into evidence. The County also contends the trial court

erred in denying its motion in limine and admitting into evidence the minutes from the Board of Commissioners' October 1975 meeting.

> A motion in limine is a pretrial method of determining the admissibility of evidence. . . . By its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. [Cit.] In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care.

*Andrews v. Wilbanks*, 265 Ga. 555, 556 (458 SE2d 817) (1995). A trial court's ruling on a motion in limine is reviewed for abuse of discretion. See *Johnson v. State*, 275 Ga. 650 (3) (571 SE2d 782) (2002); *Presswood v. Welsh*, 271 Ga. App. 459, 461 (3) (610 SE2d 113) (2005). Inasmuch as all the documents at issue are evidence that the County had an ownership interest in the dam[6] and the ownership of the dam was an issue in the case at bar when the motion in limine was decided and the evidence admitted, we cannot say the trial court abused its discretion in refusing to exclude the evidence. Moreover, if any of the trial court's rulings concerning evidence that went to the ownership of the dam was erroneous, that error was rendered harmless by the trial court's direction of a verdict against the County on the issue of the dam's ownership. See Division 1, supra.

4. The County contends the trial court's instructions to the jury erroneously included charges on the use of a writ of mandamus to enforce a county's duty to repair roads and the statutory procedure a county must follow to abandon a county road. Since the duty to repair the road was made an issue in the case, as is reflected in the jury verdict,[7] giving jury instructions on the subject was not error. The County also finds fault with the trial court's failure to include the County's requested instructions on the duty of an easement owner, rather than the servient tenement owner, to repair and the requirement that a dam owner's duty to maintain for the benefit of others must be preceded by an express or specific covenant or agreement. The issue in the case at bar was, taking into consideration the property interest of the lakefront owners in the lake, how those

---

[6] The minutes from the Board of Commissioners' October 1975 meeting reflected the Board's action "to acknowledge the previous Commissioners' acceptance of the dam," and the EPD order and the judicial rulings entered on the appeals therefrom reflected a determination that the County had an ownership interest in the dam for purposes of the Safe Dams Act.

[7] The verdict form offered the jury a choice of returning a verdict requiring that the dam and road be repaired or requiring that the dam be breached and a county road be constructed in the immediate area of the former dam.

designated by EPD as "owners" of the dam could comply with the EPD order to breach or repair the dam. The issue was not whether others not designated as owners in the EPD order had interests in the dam that could qualify as ownership interests under the Safe Dams Act. Accordingly, jury instructions on the subject of the homeowners' possible ownership interest in the dam were not appropriate, and the trial court did not err when it declined to give them.

5. Inasmuch as the judgment entered against the County is affirmed, we need not address the County's contention that it is entitled to a grant of summary judgment should the judgment entered on the directed verdict and the jury's verdict be reversed.

6. We next address the cross-appeal in which the lakefront homeowners contend the judgment requiring the repair of the dam to impound a lake with a pool elevation of 1140 MSL does not conform to the jury's verdict. See OCGA § 9-12-9, which states "Judgment and execution shall conform to the verdict." The jury returned a verdict requiring "Repair of the dam and road in conformity with requirements as permitted by the Georgia [EPD]." Based on the jury verdict, the homeowners submitted to the trial court a proposed judgment requiring a dam that impounds a lake with an elevation of 1141 MSL, the elevation reported by engineers employed as consultants by the County in 1999 as the elevation at which the lake has a normal pool area of approximately 21 acres, and described by the same consultants as the "current pool level" in 2000. The County proposed a judgment requiring a dam that impounds a lake with an elevation of 1139 MSL, relying on a repair design submitted in 1999 by its engineering consultants that would result in a lake with a normal pool elevation of 1139 MSL, which the consultants described as "approximately two feet lower than what has previously existed at the subject site."[8] Since the evidence reflected that the lake had a pool elevation of 1141 MSL prior to the emergency partial breach of the dam in 2002, and the issue for resolution in this case was the action to be taken by the dam "owners" to comply with the EPD order without diminishing the homeowners' property interest in their irrevocable easement, the judgment entered on the jury verdict in favor of the homeowners must require the repair of the dam so that it impounds a lake with a normal pool elevation of 1141 MSL. Accordingly, that portion of the judgment specifying the normal pool elevation of the lake is vacated and the trial court is directed on remand to enter a judgment specifying the normal pool elevation of the lake to be 1141 MSL.

---

[8] We note that the subdivision plat from which springs the homeowners' irrevocable easement in the lake does not contain the pool elevation of the lake.

*Judgment affirmed in part and vacated and remanded in part in Case No. S04A2031. Judgment vacated in part and remanded with direction in Case No. S04X2032. All the Justices concur.*

DECIDED MARCH 7, 2005 —
RECONSIDERATION DENIED APRIL 14, 2005.

*Terry E. Williams & Associates, Terry E. Williams, Jason C. Waymire, Banks, Stubbs, Neville & Cunat, John R. Neville,* for appellants.

*Miles, McGoff & Moore, Dana B. Miles, Larry A. Pankey, Kevin J. McDonough, Lynwood D. Jordan, Jr.,* for appellees.