## S06A1336. McKINNEY v. THE STATE.

(635 SE2d 153)

BENHAM, Justice.

Michael Deal, one of eight prisoners housed in the protective custody pod of the Chatham County Detention Center, was found hanging by a bedsheet from the doorframe of his cell on July 24, 2001. His death was believed to be a suicide until three days later, when another prisoner housed in the pod passed to a jail officer a note which stated Deal had been murdered by other inmates. Appellant Leon McKinney is an inmate found guilty of the felony murder of Michael Deal and sentenced to life imprisonment.[1]

1. The note-passing inmate testified that he, the victim, and appellant were housed in the same pod at the jail, and that appellant and four pod inmates other than the victim were engaged in a long-term project of chiseling around the window in appellant's cell in an effort to escape. On the day he was killed, the victim saw appellant and two others chiseling at the window. Later that day the victim and another pod inmate were taken separately to the jail's medical facility. Because the two were not taken to the medical facility at the same time as was the usual practice, appellant and the four other chiseling inmates speculated the victim had told authorities about their escape efforts, and they discussed what they needed to do. Later that evening, after the victim had returned to the pod, appellant lifted the victim off the ground in a bearhug and another inmate, co-indictee Joseph Williams,[2] used an elastic bandage to strangle the victim. Members of the group removed the elastic bandage, replaced it with the victim's bedsheet, and suspended his body from the doorframe of his cell. Shortly thereafter, jail personnel discovered the body.

After authorities received the note stating the victim had not committed suicide, the pod's inmates were interviewed separately and the cells in the pod were searched. The chiseling around appellant's window was discovered, as was the 12-inch metal rod that

[1] The crime was committed on July 24, 2001, and an arrest warrant for appellant was issued on August 3. The Chatham County grand jury returned a true bill of indictment charging appellant with one count of malice murder and one count of felony murder (aggravated assault) on October 31. Appellant's trial took place August 16-19, 2004, culminating in the jury's return of a guilty verdict on the felony murder charge and the trial court's imposition of a sentence of life imprisonment. Appellant timely filed a motion for new trial on August 25, 2004, and filed amendments to his motion on April 6 and July 19, 2005. The trial court denied the amended motion for new trial on September 8, 2005, and appellant filed a timely notice of appeal on September 20. The appeal was docketed in this Court on April 13, 2006, and oral argument was heard on July 17.

[2] Co-indictee Williams pled guilty to the murder of Deal and received the death penalty. This Court affirmed the judgment of conviction and sentence in *Williams v. State*, 281 Ga. 87 (635 SE2d 146) (2006).

served as the chisel. A videotaped interview of appellant by a GBI agent was played for the jury, and it showed appellant was verbally apprised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966), and executed a waiver of those rights. Appellant then told the agent he had complied with co-indictee Williams's directive to give the victim a bearhug and, when appellant picked up the victim, Williams strangled the victim with an elastic bandage. Appellant also told the agent that some of the inmates believed the victim had reported to authorities that some inmates were chipping away at the window in appellant's cell.

The forensic pathologist who performed an autopsy on the victim testified there was a "horizontally-oriented" furrowed abrasion that encircled the victim's neck, petechiael hemorrhages on the victim's face and in the sclera of his eyes, internal injuries to the neck muscles, and the greater horn of the laryngeal cartilage was broken. The expert testified such injuries were not commonly found in a hanging but were consistent with a ligature strangulation.

The evidence was sufficient to authorize a rational trier of fact to find appellant guilty of felony murder beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant contends he was denied his right to effective assistance of counsel. To prevail on a claim of ineffective assistance, appellant must show deficient performance on the part of trial counsel and prejudice to his defense resulting from that deficient performance. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984). Trial counsel's decisions that amount to reasonable trial strategy do not constitute deficient performance (see *Moore v. State*, 279 Ga. 45 (8) (609 SE2d 340) (2005)), and there is a strong presumption that trial counsel's conduct fell within the broad range of reasonable professional conduct. *Mobley v. State*, 271 Ga. 577 (523 SE2d 9) (1999).

(a) Appellant contends trial counsel was ineffective because counsel: failed to subpoena two witnesses, a GBI agent and a probation officer who purportedly would have testified appellant wished to recant his inculpatory statement; failed to object to the hearsay testimony of the note-passing inmate recounting what other inmates involved in the slaying said during the course of the conspiracy to kill the victim; and failed to object to testimony concerning appellant's initial statement to authorities in which appellant denied any knowledge concerning the victim's death.

At the hearing on the motion for new trial, trial counsel testified that the two witnesses, whose existence he had learned of mid-trial, were present at trial and counsel had informed the court during the trial that he had consulted with appellant and they had decided the witnesses would not be called because the information they would

have provided had been elicited during cross-examination of a State's witness. Trial counsel's testimony establishes that the failure to call the witnesses was a reasonable strategic decision that did not constitute deficient performance. *Nichols v. State*, 257 Ga. 558 (1) (a) (361 SE2d 486) (1987). Trial counsel testified he did not object to the hearsay testimony of the note-passing inmate because he believed the hearsay statements fell within the exception permitting hearsay statements made by co-conspirators during the pendency of the conspiracy. See OCGA § 24-3-5. Inasmuch as trial counsel was correct (see Division 4, infra), his failure to object did not constitute deficient performance. As for the testimony concerning appellant's initial statement denying knowledge, trial counsel testified he did not object to the testimony because it bolstered the defense theory of the case that the initial statement was true and appellant had given the subsequent inculpatory statement only after being threatened by co-indictee Williams. Such a decision was a reasonable strategic decision and does not constitute deficient performance. See *Moore v. State*, supra, 279 Ga. 45 (8).

(b) Appellant also contends he was denied effective assistance of counsel by the action of another attorney who was retained by appellant's family friends three years after appellant was indicted and while appellant was represented by trial counsel. The attorney did not file a notice of appearance in the case but arranged for appellant to undergo a polygraph examination. The exam results were ruled inadmissible because the attorney had not secured from the State the stipulation necessary in order for the test results to be admitted at trial. See *State v. Chambers*, 240 Ga. 76 (239 SE2d 324) (1977) (results of a polygraph examination are admissible upon an express stipulation of the parties that the results shall be admissible as evidence for the jury to attach to them whatever probative value they may find them to have); *Durham v. State*, 240 Ga. 203 (3) (240 SE2d 14) (1977) (polygraph test results inadmissible because State did not stipulate to their admission). Appellant contends the attorney's failure to obtain from the State the requisite stipulation of admissibility constitutes ineffective assistance of counsel that entitles him to a new trial.

We do not address the question whether a new trial may result from a claim of ineffective assistance lodged against an attorney who acted on behalf of a criminal defendant but who never filed a notice of appearance in the criminal case because it is clear that even assuming such a claim can be brought, appellant has established neither deficient performance nor prejudice in the attorney's failure to obtain from the State the stipulation authorizing the admissibility of the

results of the polygraph exam. A stipulation is a "voluntary agreement between opposing counsel concerning disposition of some relevant point . . ." (Black's Law Dictionary, 1269 (5th ed. 1979)), and appellant has not asserted, argued, or presented evidence that the State was willing to enter into a stipulation to authorize the admission of the polygraph results. Since appellant did not establish that the attorney's performance was deficient or that appellant suffered prejudice therefrom, any claim for ineffective assistance is without merit. See *Taylor v. United States*, 2006 U. S. Dist. LEXIS 49450, p. 14 (N.D. Ind., July 10, 2006).

3. Appellant maintains the trial court erred when it denied his motion to suppress appellant's videotaped statement because counsel representing appellant on the unrelated charges for which he was housed in the detention center was not contacted prior to the interview that produced the statement inculpating appellant in the murder. We see no merit in appellant's assertion. The Sixth Amendment right to assistance of counsel is "offense specific. It cannot be invoked once for all future prosecutions, for it does not attach until a prosecution is commenced, . . . at or after the initiation of adversary judicial criminal proceedings. . . ." (Citations and punctuation omitted.) *McNeil v. Wisconsin*, 501 U. S. 171, 175 (111 SC 2204, 115 LE2d 158) (1991). Thus, the earlier appointment of counsel to represent appellant with regard to the unrelated charges did not constitute an appointment of counsel to represent appellant with regard to the murder of a fellow inmate for which adversary judicial criminal proceedings had not yet begun at the time appellant was interviewed. Appellant was advised of his Fifth Amendment right to counsel at the initiation of the questioning about the murder and executed a waiver of that right. The trial court held a hearing pursuant to *Jackson v. Denno*, 378 U. S. 368 (84 SC 1774, 12 LE2d 908) (1964), at which the court determined appellant's inculpatory statement was made freely and voluntarily. The trial court did not err when it refused to suppress the inculpatory statement.

4. Citing *Crawford v. Washington*, 541 U. S. 36 (124 SC 1354, 158 LE2d 177) (2004), and his constitutional right to confront the witnesses against him, appellant contends the trial court erred when it permitted the note-passing inmate to relate to the jury statements made by the chiseling inmates when they were discussing what to do about the possibility the victim was going to tell authorities about their effort to escape. Georgia law authorizes the admission of declarations by a co-conspirator against the other co-conspirators during the pendency and concealment phases of the criminal project. OCGA § 24-3-5. Where, as here, the co-conspiratorial statements are made during the pendency of the conspiracy, they "are presumed to be

sufficiently reliable to satisfy the Confrontation Clause's requirement of trustworthiness." *Waldrip v. State*, 267 Ga. 739, 747 (10) (c) (482 SE2d 299) (1997). Thus, it was not error to permit the inmate to testify about the statements the co-conspirators made during the pendency of the conspiracy.[3]

Appellant also contends the admission of the declarations of the co-conspirators is at odds with the U. S. Supreme Court's decision in *Crawford v. Washington,* supra. In *Crawford,* the Court held that the Sixth Amendment's right of confrontation "demands . . . unavailability and a prior opportunity for cross-examination" before testimonial hearsay can be admitted against a criminal defendant. Id., 124 SC at 1374. The Court went on to point out that statements admissible pursuant to the hearsay exception permitting the use of statements made in furtherance of a conspiracy are not "testimonial." Id., 124 SC at 1367. Accordingly, the holding in *Crawford* is not applicable to the admission of the statements of the co-conspirators made during the pendency of the conspiracy. *Shelton v. State*, 279 Ga. 161 (5) (611 SE2d 11) (2005). See also *United States v. Underwood,* 446 F3d 1340, 1347-1348 (11th Cir. 2006); Jerome C. Latimer, "Confrontation After Crawford: The Decision's Impact on How Hearsay is Analyzed Under the Confrontation Clause," 36 Seton Hall L. R. 327, 372 (2006) ("[s]tatements made by co-conspirators in the course of and in furtherance of a conspiracy and made to co-conspirators or others unconnected to law enforcement appear to be clearly outside the realm of being testimonial"). Accordingly, the note-passing inmate's testimony about statements made by co-conspirators during the pendency of the conspiracy did not violate appellant's constitutional right to confront the witnesses against him.

*Judgment affirmed. All the Justices concur.*

DECIDED SEPTEMBER 18, 2006.

*Martin G. Hilliard,* for appellant.

*Spencer Lawton, Jr., District Attorney, Thomas M. Cerbone, Assistant District Attorney, Thurbert E. Baker, Attorney General, Edwina M. Watkins, Assistant Attorney General,* for appellee.

---

[3] Because the common-law rule does not extend to statements made during the concealment phase, indicia of reliability must be present for co-conspiratorial statements made during that phase to be admitted. *Copeland v. State,* 266 Ga. 664 (2) (b) (469 SE2d 672) (1996). See also *Neason v. State,* 277 Ga. 789 (2) (596 SE2d 120) (2004).