## S07A0200. PRUITT v. THE STATE.
### (644 SE2d 837)

Benham, Justice.

Appellant Kenneth Pruitt and his co-indictee James Willis Looper were tried together for the murder of Gary Collins and crimes connected thereto. Appellant Pruitt was convicted of the felony murder and armed robbery of Collins and possession of a firearm during the commission of the crimes.[1]

The State presented evidence the victim was a drug dealer who had sold cocaine on credit to co-defendant Looper and Looper's wife on April 8, 2002, and the Loopers had split the drugs with appellant and his girlfriend. The victim repeatedly left messages on the cellular phones of both Loopers in an effort to collect the debt. On April 11, 2002, Looper and appellant were at the mobile home appellant shared with his girlfriend, and decided to meet the victim at the Loopers' duplex in order to obtain more drugs under the pretext they were going to pay the outstanding debt. Appellant and Looper together left the mobile home appellant shared with his girlfriend and went to the duplex occupied by Looper and his wife. Once there, the two men sat on the front porch drinking beer and talking. The occupant of the other unit of the duplex returned home and walked over to the two men. Looper advised her and her male companion to leave the premises because "something was fixing to go down." Shortly thereafter, the other tenant and her guest left. The victim drove with his girlfriend to the Looper duplex and spoke with

---

[1] The crimes took place on April 11, 2002. Appellant and Looper were arrested in Burke County on April 12 and both were indicted by the Richmond County grand jury on June 4, 2002, for malice murder, felony murder (aggravated assault), armed robbery, hijacking a motor vehicle, and possession of a firearm during the commission of a crime. Appellant was also charged with possession of a firearm by a convicted felon. Appellant and Looper were tried together before a jury beginning February 3, 2003, and the trial concluded on February 7 with the return of the jury's verdicts finding appellant guilty of felony murder, armed robbery, and possession of a firearm during the commission of a crime. The trial court sentenced appellant on April 4 to life imprisonment for the murder conviction, a concurrent life sentence for armed robbery, and a consecutive five-year sentence for the firearm conviction. Appellant's motion for new trial was timely filed on April 10, 2003, and appellant filed a pro se amendment in April 2004 in which he alleged ineffective assistance of trial counsel. Appellate counsel filed an entry of appearance on August 3, 2004, and a hearing on the amended motion for new trial took place on September 6, 2005. The trial court denied the amended motion in an order filed on September 20, 2005. Appellant's notice of appeal was filed on October 4, 2005, and his appeal was docketed in this Court on October 5, 2006. It was submitted for decision on the briefs.

co-defendant Looper and appellant on the front porch. The victim's girlfriend testified the victim entered the apartment with the two men while she remained in the locked car. The victim did not exit the apartment and when Looper left the apartment, he was carrying the victim's cellular telephone and pager. Looper pointed a gun at the victim's girlfriend, thereby gaining access to the driver's seat of the victim's car, and appellant got in the backseat of the victim's car. The duo drove off in the car with the victim's girlfriend in the front passenger seat.

The victim's body was found in the Loopers' unit of the duplex on April 13. An autopsy revealed he had been shot in the neck, perforating the left carotid artery and the jugular vein, and in the upper right chest, perforating the aorta, from a distance of less than eight feet. A spent bullet was recovered from the victim's body and another was found imbedded in a wall of the duplex's living room. A Lorcin .380 pistol owned by Kay Wimberly, the woman with whom appellant lived, was determined by a firearms expert to have been the murder weapon.

Looper's wife testified appellant said he had shot the victim twice and Looper told her appellant had shot the victim after the victim had entered the duplex and Looper had locked the door behind him. Appellant's girlfriend identified the murder weapon as a gun which belonged to her and which she kept hidden under her mattress in the mobile home she shared with appellant. She testified that both appellant and Looper knew she owned a gun and that she had not given her gun to either of them. The victim's girlfriend, Keisha Wheeler, testified appellant told her the victim was dead and that they had shot him twice.

1. Appellant contends the evidence was insufficient to authorize his conviction for armed robbery because there was no evidence he possessed the cellular phone and pager taken from the victim, and the evidence was insufficient to authorize the conviction for felony murder because there was no evidence appellant had the requisite intent and no evidence corroborating the testimony of his co-defendant that the duo were parties to the crimes and that appellant was the person who shot the victim.

After reviewing the trial transcript, we conclude there was sufficient evidence of appellant's direct culpability to authorize the jury to conclude beyond a reasonable doubt that appellant fired the shots that killed the victim. Co-defendant Looper's testimony that appellant fired the fatal shots was corroborated by the testimony of Looper's former wife that appellant told her he had shot the victim twice. *Hewitt v. State*, 277 Ga. 327 (1) (a) (588 SE2d 722) (2003) (accomplice's testimony must be corroborated to support a conviction

and slight evidence of corroboration connecting the defendant to a crime is legally sufficient).

There was also sufficient evidence to authorize the jury to conclude Looper fired the fatal shots and appellant was a party to that crime and to the armed robbery which netted the victim's cellular phone and pager.

> (a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.
>
> (b) A person is concerned in the commission of a crime only if he:
>
> (1) [d]irectly commits the crime; . . .
>
> (3) [i]ntentionally aids or abets in the commission of the crime; or
>
> (4) [i]ntentionally advises, encourages, hires, counsels, or procures another to commit the crime.

OCGA § 16-2-20. If one other than appellant was the actual perpetrator of the murder and armed robbery, appellant's

> [m]ere presence at the scene . . . [is] not sufficient evidence to establish that the defendant was a party to the crime. [Cit.] Proof that the defendant shares a common criminal intent with the actual perpetrators is necessary [cit.], and may be inferred from the defendant's conduct before, during, and after the crime[s]. [Cit.]

*Eckman v. State*, 274 Ga. 63 (1) (548 SE2d 310) (2001). "To warrant a conviction on circumstantial evidence, the proved facts shall . . . exclude every other reasonable hypothesis save that of the guilt of the accused." OCGA § 24-4-6. Where the evidence authorizes the jury to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, the jury's finding will not be disturbed unless the guilty verdicts are insupportable as a matter of law. *Foster v. State*, 273 Ga. 34 (1) (537 SE2d 659) (2000).

Appellant shared with Looper the drugs purchased from the victim on credit and was with Looper prior to, during, and after the victim was killed. He was with Looper when Looper warned the neighbors that "something was going down," and urged them to leave. He waited with Looper for the victim and entered the duplex with the victim and Looper. After the shooting, appellant got in the victim's car with Looper and returned with him and the victim's girlfriend to the mobile home where appellant lived. The victim's girlfriend testified

appellant told her "they," meaning Looper and appellant, had shot the victim twice. In addition, appellant lived with the owner of the murder weapon and had opportunity to remove the gun from its hiding place under the mattress. There was sufficient evidence from which the jury could conclude beyond a reasonable doubt that appellant was guilty of the crimes as a party. *Hewitt v. State*, supra, 277 Ga. at 329; *Brown v. State*, 277 Ga. 623 (1) (593 SE2d 343) (2004).

2. Appellant takes issue with the order in which the trial court gave certain jury instructions.[2] The trial court charged the jury that a defendant's mere presence at the scene of the commission of a crime did not authorize finding the defendant guilty unless the evidence established beyond a reasonable doubt that the defendant committed the crime, helped in the commission of the crime, or participated in the criminal endeavor. The trial court then informed the jury of the elements of the various crimes the defendants were charged with committing, and thereafter instructed the jury that participation in the criminal intent could be inferred from presence, companionship, and conduct before and after the commission of the offenses. Appellant complains the trial court gave a "contradictory" and "incomprehensible" jury instruction when it failed to give the charge on inferring participation in the criminal intent immediately after giving the instruction on mere presence. The two charges are accurate statements of law (see *Jones v. State*, 242 Ga. 893 (252 SE2d 394) (1979)), and are not contradictory. *Johnson v. State*, 275 Ga. 650 (8) (571 SE2d 782) (2002). That the charges are complementary and are often stated together as a single principle of law (see id.) does not mean that their separation makes the resulting charge "incomprehensible." There is no merit to appellant's assertion.

3. Appellant maintains the trial court committed reversible error when it gave a jury instruction on the law of parties to a crime. See OCGA § 16-2-20, supra. As the summary of the evidence previously given herein makes clear, the evidence authorized the giving of a charge on parties to a crime, and the charge given was a correct statement of the law. Accordingly, the trial court did not err in giving the charge. *Williams v. State*, 277 Ga. App. 106 (4) (625 SE2d 509) (2005). See also *Johnson v. State*, supra, 275 Ga. 650 (8) (tacit agreement that forms basis of a conspiracy evidenced by behavior).

4. Appellant contends he was not afforded effective assistance of counsel at trial.

---

[2] Appellant preserved appellate review of the content of the jury instructions by reserving his objections at the close of the jury charge. Later, appellant affirmatively stated he had no objection to each of the three re-charges the trial court gave the jury before they returned their verdicts.

> To prevail on [his] claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced [him] to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. [Cits.] A strong presumption exists that counsel's conduct falls within the broad range of professional conduct. [Cit.]

*Coggins v. State*, 275 Ga. 479, 481-482 (3) (569 SE2d 505) (2002). Appellant sets forth eight examples of what he contends is prejudicial deficient performance by trial counsel.

(a) Appellant contends trial counsel performed deficiently when he did not seek suppression of evidence about the alleged kidnapping and rape of the victim's girlfriend that purportedly took place after the victim was killed but before his body was discovered;[3] when trial counsel did not have recorded the voir dire of the venire during which these topics were mentioned; and when trial counsel failed to object when testimony about those events was given. Inasmuch as evidence of criminal acts which took place in other jurisdictions and to which appellant was connected because they were part of the crime spree that began with the murder of the victim were admissible at trial (*Eckman v. State*, supra, 274 Ga. 63 (2)), counsel's failure to seek suppression or object to admission of the evidence did not constitute deficient performance.

(b) Trial counsel's failure to seek a mistrial after the trial court overruled his objection that the opening statement of the prosecuting attorney was argumentative was not deficient performance. If it is reasonable trial strategy not to seek a mistrial when an objection to the opening statement has some merit (*Phillips v. State*, 284 Ga. App. 683, 686 (2) (644 SE2d 535) (2007)), it was reasonable trial strategy not to seek a mistrial when an objection was overruled. Reasonable trial strategy does not constitute deficient performance. *McKinney v. State*, 281 Ga. 92 (2) (635 SE2d 153) (2006).

(c) Trial counsel's failure to object to the jury instructions on mere presence and parties to a crime was not deficient performance since the charges were correct statements of the law and were supported by the evidence. See Divisions 2 and 3, supra.

(d) Appellant contends trial counsel performed deficiently in closing argument when he stated appellant believed he was accompanying his co-defendant to a drug deal at which the co-defendant

---

[3] These crimes were not part of the Richmond County prosecution because they purportedly took place in neighboring Burke County.

was going to "beat up" the drug dealer. However, such an argument fit within the defense's theory of the case — that appellant was nothing more than a witness to his co-defendant's act of shooting the victim to death. Counsel's argument in furtherance of the trial strategy fell within the broad range of reasonable professional conduct. See *Fennell v. State*, 271 Ga. App. 797 (6) (f) (611 SE2d 96) (2005).

(e) Trial counsel did not perform deficiently when he entered into a stipulation with the prosecution to the effect that vaginal penetration could occur without leaving "testable" DNA material. At the hearing on the motion for new trial, trial counsel testified he agreed to the stipulation because it was a "common sense" proposition that "any physician would have said. . . ." Entering into a stipulation is a valid trial strategy (see *Thornton v. State*, 279 Ga. 676 (6) (b) (620 SE2d 356) (2005); *Osterhout v. State*, 266 Ga. App. 319 (4) (a) (596 SE2d 766) (2004)), and reasonable trial strategy does not constitute deficient performance. *McKinney v. State*, supra, 281 Ga. 92 (2).

(f) Trial counsel's failure to move for a directed verdict of acquittal at the close of the evidence was not deficient performance since, as noted in Division 1, supra, the evidence presented by the State was sufficient to authorize appellant's convictions. *Coggins v. State*, supra, 275 Ga. 479 (3).

The trial court did not err when it concluded that trial counsel "was not ineffective and was in fact capable and competent in the manner in which he represented the defendant."

5. Appellant's motion to remand the case to the trial court for a hearing on additional grounds of ineffective assistance of counsel is denied. The filing of a notice of appeal "divests the trial court of jurisdiction to alter a judgment while appeal of that judgment is pending." *Peterson v. State*, 274 Ga. 165, 171 (6) (549 SE2d 387) (2001). Once the notice of appeal was filed, the trial court was without jurisdiction to consider any amendment to the motion for new trial that had been denied, and any order entered by the trial court on the merits of said motion would be a nullity. Id.[4]

*Judgment affirmed. All the Justices concur.*

DECIDED MAY 14, 2007.

*David S. Klein*, for appellant.

---

[4] However, the trial court acted properly when it considered appellate counsel's motion for withdrawal and substitution of counsel after the notice of appeal was filed. *Elrod v. State*, 222 Ga. App. 704 (1) (475 SE2d 710) (1996).

*Daniel J. Craig, District Attorney, Charles R. Sheppard, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jason C. Fisher, Robin J. Leigh, Assistant Attorneys General*, for appellee.