## S07A0705. BANTA v. THE STATE.
### (651 SE2d 21)

HINES, Justice.

Katherine Louise Banta appeals her convictions for felony murder while in the commission of cruelty to children in the first degree and making a false statement to a government agency in connection with the death of 23-month-old Charisma Wallace. Banta challenges the sufficiency of the evidence; the failure to grant a directed verdict; the denial of her motion in limine regarding certain photographs; the refusal to allow what she characterizes as "rehabilitation evidence";

the refusal to charge the jury on reckless conduct; and the effectiveness of trial counsel. Finding the challenges to be without merit, we affirm.[1]

The evidence construed in favor of the verdicts showed that Charisma Wallace, aged 23 months, died on February 28, 2004, while in the care of her babysitter, Katherine Banta. Charisma died from severe aspiration pneumonia that developed because of brain swelling and bleeding on the surface of the brain caused by multiple blows to her head and face. Banta was the only adult at home with Charisma during the afternoon and early evening of February 28, 2004. Earlier in the day, Banta, her adult daughter, and Charisma had visited a store. The child then appeared uninjured and was able to walk through the store on her own. When dropped off at the Banta home, Charisma had no visible injuries except a bruise near one eye.

When Charisma's grandparents went to the Banta home around 4:00 p.m. or 4:30 p.m. to pick up the child, Banta met the grandmother on the front porch and told her that Charisma was sick from eating two hamburgers and fries, had thrown up on herself, and that she was cleaning up the child in the tub. Banta said that she would bring the child to the grandmother later that evening when her husband got home.

At 12:56 a.m. on February 29, 2004, emergency medical personnel responded to a "child not breathing" call from the Banta home. Banta told one of the emergency responders that Charisma had gotten hold of a hot pepper and was eating it; that she took the pepper away; that Charisma was complaining that her mouth was burning from the pepper; and that when Banta tried to give the child milk to

---

[1] The fatal acts of cruelty to the child occurred on February 28, 2004, and the false statement to the government agency was made on February 29, 2004. On July 11, 2005, a Whitfield County grand jury indicted Banta for Count 1 – malice murder; Count 2 – felony murder while in the commission of cruelty to children by beating the child Charisma Wallace as alleged in Count 3; Count 3 – cruelty to children in the first degree by beating Charisma Wallace; Count 4 – felony murder while in the commission of cruelty to children by depriving Charisma Wallace of necessary and appropriate medical care; Count 5 – cruelty to children in the first degree by depriving Charisma Wallace of necessary and appropriate medical care; and Count 6 – making a false statement to a government agency. Banta's husband, Clinton Banta, was jointly indicted with her on Counts 4 and 5 and in a separate Count 7, charging him with making a false statement to a government agency. Banta, along with her husband, was tried before a jury September 26-October 1, 2005. Banta's husband was acquitted on Counts 4 and 5, but found guilty on Count 7; he was sentenced to five years in prison. His conviction was subsequently affirmed on appeal. See *Banta v. State*, 281 Ga. 615 (642 SE2d 51) (2007). Banta was acquitted of malice murder, but found guilty of the remaining charges against her. On October 5, 2005, Banta was sentenced to life in prison on Count 2 and a concurrent five years in prison on Count 6; the trial court found that Counts 3, 4, and 5 merged with Count 2 for the purpose of sentencing. A motion for new trial was filed on November 3, 2005, amended on December 14, 2006, and denied as amended on January 3, 2007. A notice of appeal was filed on January 11, 2007, and the case was docketed in this Court on January 26, 2007. The appeal was submitted for decision on briefs.

cool her mouth she realized that Charisma was not breathing. The responders found the child lying on the kitchen floor with Banta's husband attempting CPR on her; they had to move furniture and trash out of the way in order to get to the little girl. Charisma was moist or wet, without a pulse or heartbeat, not breathing, her pupils were fixed and dilated, and her skin was an abnormal brownish bluish color; she was in full arrest. The little girl had numerous bruises "from head to toe." It was the worst case of injuries to a child that one of the responders had ever seen, including children hurt in vehicular accidents. In order to intubate the child, the emergency personnel suctioned her mouth and reddish brown fluid came out from it and from her throat and lungs. When one of the emergency technicians asked Banta about the injuries to Charisma's face and head, she told him that the little girl had pulled a mason jar of pickles off the counter onto her head. As the emergency personnel took the child to the ambulance, Banta stated that the child had fallen off a swing.

Banta later related to her husband's supervisor that there had been an accident and that a baby had died. She stated, "It was in the bathtub playing with the bubbles and the next thing she knew it was dead." At the hospital, Banta told Charisma's distraught mother that the little girl "had gotten a hold of some jalapeno juice," that she wanted some milk, that Banta fixed her a cup of milk, that she tried to get the child to drink it, but the milk just ran down her chin, that Banta told her husband to call 911, and that when her husband left the room, the child fell back on the bed and stopped breathing.

In a statement to police, Banta claimed, inter alia, that when Charisma arrived that Saturday morning, she had a "pump knot" on her head; the knot was from a fall out of her high chair two days earlier; the child also had a "little mark on the side of her nose"; while Charisma was playing outside, Banta "heard a thump" and discovered that the child had been knocked down by her brother; shortly after Banta took Charisma in the house, she threw up on her; Banta drew a bubble bath for Charisma; a six-year-old girl that lived in the home dressed Charisma after her bath and put her in bed; Charisma got out of bed and went into the kitchen; Charisma had put a whole pepper in her mouth and Banta tried to get it out; Banta tried to get Charisma to spit out the pepper by bending her over a rail; Banta "may have hit her on the back"; after Charisma spit out the pepper, Banta put her back in bed; she then noticed that Charisma had "messed" in her diaper, which was unusual, and she changed it; Charisma complained that she was cold and Banta covered her; Banta unsuccessfully searched for her "granddaughter's breathing machine" because Charisma was "rattling"; Banta put some salve on Charisma and that "seemed to help a little"; Charisma seemed better

so Banta "went down to the computer room"; Banta "heard somebody get out of the bed" and by the time Banta got to the kitchen Charisma was there; she put Charisma back to bed and covered her, then the little girl "started sounding rattly again"; Banta picked up Charisma and placed her on a heating pad on Banta's bed; Banta's husband came up and said that Charisma "was sounding worse"; he went to disconnect the computer so that Charisma's parents could be called; after Banta picked up Charisma and started down the hall, the child "just went limp and fell over"; Banta's husband attempted CPR; and 911 was called.

An autopsy on Charisma revealed dried vomit on her face, which was damaged by stomach acid. She had sustained two "pattern injury" contusions on the center of her forehead, indicating something had struck her there. There were also bruises, some of them pattern injuries, on the right forehead, left forehead, cheekbone, right cheek, right chin, lower back, groin, left leg, and left thigh; some of the bruises corresponded to spiral-patterned rings worn by Banta. Charisma also had multiple smaller bruises on her face and various scrapes on other body parts. "Hundreds" of bright red spots on her scalp indicated that some of her hair had been pulled out. The internal examination revealed bruising under the scalp, bruising underneath the "pattern injury" on the forehead, a large injury between the eyebrows, and bleeding under the scalp. The brain was moderately swollen and coated with a thin layer of blood. The child's lungs reflected aspiration pneumonia from lying in vomit and sucking the acidic vomit into them.

The medical examiner testified that symptoms of brain swelling occur rapidly; that a child with this type of swelling would be unable to perform normal functions such as walking, talking, or waking up; that the child would not have appeared normal because of the acid burns on her cheeks; that it would have taken at least two hours to develop aspiration pneumonia; and that the little girl could have survived with medical intervention.

1. Banta contends that the evidence against her was insufficient for conviction because it was circumstantial, in that there were no witnesses or conclusive forensic evidence linking her to the crimes, and there was evidence of other causes of the child's injuries. But, the contention is unavailing. In a case in which the conviction is based entirely upon circumstantial evidence, but where the jury is authorized to find that the evidence, though circumstantial, was sufficient to exclude every reasonable hypothesis save that of guilt, this Court will not disturb that finding unless the verdict of guilty is unsupportable as a matter of law. *Brooks v. State*, 281 Ga. 514, 515-516 (1) (640 SE2d 280) (2007). It is the province of the jury to resolve any conflicts in the evidence and to determine the credibility of witnesses, and the

fact that such conflicts may be resolved adversely to the defendant does not render the evidence insufficient. Id. at 516 (1). The evidence was sufficient to authorize the jury to determine that the State excluded all reasonable hypotheses save that of Banta's guilt, and to authorize a rational trier of fact to find Banta guilty beyond a reasonable doubt of the crimes for which she was convicted. Id.; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Banta complains that the trial court erred by denying her motion for a directed verdict of acquittal on the charge of malice murder. However, this complaint is rendered moot because Banta was not found guilty of that offense. *Matthews v. State*, 268 Ga. 798, 803 (5) (493 SE2d 136) (1997).

3. Banta moved in limine to exclude certain photographs of her home taken by emergency responders and evidence of remarks by neighbors, former associates, and others encountered by the responders and investigators which were critical of the cleanliness, order, and general condition of her home and premises. The trial court denied the motion in limine as to the photographs[2] but granted it as to these hearsay remarks. Banta contends that the trial court erred in denying the motion in limine with respect to these photographs of her residence because they had no probative value and were used by the State solely to inflame the passions of the jury.

Banta's residence was a crime scene. Photographs of a crime scene offered to show how it existed when authorities arrived are generally admissible. *Palmer v. State*, 277 Ga. 124, 125 (3) (587 SE2d 1) (2003). Moreover, the trial court has broad discretion in balancing the probative and prejudicial nature of crime scene photographs. *Dean v. State*, 273 Ga. 806 (2) (546 SE2d 499) (2001). In this case, no abuse of that discretion can be shown inasmuch as the photographs of Banta's residence were relevant to illustrate the cluttered living conditions of the home leading to the difficulties that had to be dealt with by the emergency responders; they were also relevant to evaluate the details of Banta's versions of how the child was injured as the result of contact with things in the home and yard and Banta's efforts to help the child's distress.[3] Id.

---

[2] The trial court added the caveat that the motion was denied regarding the photographs because it assumed that they would be relevant for the reasons given by the State and that there would be "some connecting evidence."

[3] In argument, Banta also complains about two photographs not raised in her motion in limine. She alleges that the trial court erred in admitting into evidence State's Exhibit No. 53, what she characterizes as a "staged" photograph. But, the photograph merely depicts the victim in life being hugged by her older brother, and in no manner runs afoul of the prohibition of *Brown v. State*, 250 Ga. 862, 866 (5) (302 SE2d 347) (1983). See *Ledford v. State*, 264 Ga. 60, 67 (15) (439 SE2d 917) (1994). Banta further complains that the trial court abused its discretion in allowing into evidence State's Exhibit No. 13, which depicted injuries to the victim's

4. In the cross-examination of Banta's co-defendant husband, the State questioned him about his experience babysitting children and the importance of being truthful to law enforcement officers. During this questioning, the prosecutor stated, "Y'all have been doing baby sitting as we've heard off and on a number of years." Banta contends that the reference to "y'all" implies her involvement as well, and that the trial court erred in not allowing her to introduce "rehabilitation" evidence, i.e., evidence of her good character, in the form of witness testimony about her care of other children in her home after the State "opened the door" to the issue of character by this reference to her. But, the contention is unavailing.

First, assuming that the reference to "y'all" allowed the jury to infer the inclusion of Banta, the questioning at issue was not an assault upon Banta's character. Even if it was, Banta was not authorized to call third parties to testify to specific acts of her past good conduct. *Boyce v. State*, 258 Ga. 171 (1) (366 SE2d 684) (1988). In any event, the trial court permitted Banta to call the character witnesses she requested with the only proviso that she not attempt to show her good character by resorting to reference to specific incidents.

5. Banta is likewise unsuccessful in her claim that the trial court erred in not charging the jury on reckless conduct as a lesser included offense of cruelty to children.

Banta requested that the trial court instruct the jury on reckless conduct as a lesser included offense of Count 5 in the indictment, which charged Banta and her husband with cruelty to children in the first degree, OCGA § 16-5-70, by maliciously causing the victim cruel and excessive physical and mental pain by depriving her of necessary and appropriate medical care. In order to prove cruelty to children in the first degree, it must be established that the mental state of the defendant has the absence of all elements of justification or excuse and the presence of an actual intent to cause the particular harm, or there is the wanton and wilful doing of an act with an awareness of a plain and strong likelihood that such harm might result. *Kennedy v. State*, 277 Ga. 588, 590 (1) (b) (592 SE2d 830) (2004); *Jones v. State*, 263 Ga. 835, 839 (2) (439 SE2d 645) (1994). Although reckless conduct may be a lesser included offense of cruelty to children, reckless

---

forehead, and when shown to the victim's grandmother, evoked an emotional response from her. But, the fact that viewing the photograph may have brought the grandmother to tears does not provide a legal basis for finding fault with the trial court's permitting the viewing. Generally, photographs which depict the location and nature of a victim's wounds are relevant and material, and therefore, admissible. *Morgan v. State*, 276 Ga. 72, 76 (7) (575 SE2d 468) (2003). The photograph at issue was indeed relevant and material as it was used to illustrate the critical change in the victim's appearance which occurred after the grandmother left her at the Banta home.

conduct is not an intentional act but rather one of criminal negligence which causes bodily harm or endangers the bodily safety of another; it is the conscious disregard of a substantial and unjustifiable risk that the defendant's act or omission will cause the harm at issue or endanger the safety of the other person. *Ferguson v. State*, 267 Ga. App. 374, 375 (2) (599 SE2d 335) (2004).

Banta testified that the child was fine, and exhibiting only "rattly" breathing due to some chest congestion until the child keeled over in Banta's arms, after which help was immediately summoned. Therefore, if the jury believed Banta's trial testimony or any of her prior versions of events, there was no conscious disregard of a substantial and unjustifiable risk that her failure to secure necessary and appropriate medical care for the child would endanger the child's safety or cause her death. And the State's evidence was that Banta maliciously caused the child's suffering. Thus, in this case, the trial court was not required to charge the jury on reckless conduct as a lesser included offense of cruelty to children in the first degree. Id.

6. Finally, Banta contends that her trial counsel rendered ineffective assistance in various respects. But, to prevail on her claim of ineffective assistance, Banta must demonstrate that her attorney's performance was deficient and that such deficient performance so prejudiced her that there is a reasonable likelihood that, but for counsel's errors, the outcome at trial would have been different; she also must overcome the strong presumption that the attorney's conduct fell within the broad range of reasonable professional conduct. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Sweet v. State*, 278 Ga. 320, 321-322 (602 SE2d 603) (2004). In reviewing the lower court's determination regarding a claim of ineffective assistance of counsel, this Court must uphold the lower court's factual findings unless they are clearly erroneous; the lower court's legal conclusions are reviewed de novo. *Sweet*, supra at 321-322; *Bales v. State*, 277 Ga. 713, 715 (2) (594 SE2d 644) (2004). The trial court found that trial counsel was an experienced attorney who practiced solely criminal law, and that counsel investigated the case, interviewed witnesses, filed pretrial motions, raised numerous objections, and consulted with Banta before and during trial; it concluded that counsel's performance was not deficient, but that even if it was, Banta failed to carry her burden of demonstrating a reasonable probability of a different result at trial.

(a) Banta maintains that counsel was ineffective for not introducing into evidence photographs of the area of her yard where the child allegedly fell in order to show a tree root which could have caused the bumps on the child's head. But, at the amended motion for new trial hearing, counsel testified that the photographs introduced into evidence by the State fairly illustrated the area in question, and

Banta has failed to show anything to the contrary. Thus, counsel's failure to attempt to introduce into evidence additional photographs did not constitute deficient performance. *Pruitt v. State*, 282 Ga. 30, 34 (4) (a) (644 SE2d 837) (2007).

(b) Banta alleges that counsel was ineffective for not objecting to unspecified photographs of the child's head and face, which counsel believed to be inflammatory, on the basis that the photographs were repetitious. But, Banta has not shown that any failure to object on that basis was deficient. *Pruitt*, supra at 34 (4).

(c) Banta next complains that counsel did not attempt to subpoena a certain witness to trial to support an alternative theory that the child's father had caused her injuries. But, counsel explained that the witness was "clearly hostile" to the point that counsel would not consider putting him on the stand or "giving him any credit whatsoever." Thus, Banta fails to show that the decision to forego securing the witness was anything other than the exercise of reasonable strategy. *Peterson v. State*, 282 Ga. 286 (647 SE2d 592) (2007).

(d) Banta urges that counsel was ineffective for "not dealing with" the State's argument impacting the introduction of photographs regarding the jalapeno peppers. But, Banta is silent as to how counsel should have proceeded. Thus, deficient performance is not shown. *Pruitt*, supra at 34 (4).

(e) Banta also complains of counsel's failure to pursue the issue of the child's stomach contents as well as evidence regarding clothing, any DNA present on Banta's rings, and the amount of vomit on the child's shirt or bed clothing in order to bolster Banta's credibility with the jury. But, there is no showing, forensic or otherwise, to support the notion that any such additional evidence would have benefitted the defense. Mere speculation will not support a claim of ineffective assistance of counsel. *McDaniel v. State*, 279 Ga. 801, 802 (2) (c) (621 SE2d 424) (2005).

(f) Banta faults counsel for failing to get "pictorial evidence" to "address the issue of the dogs," as testified to by emergency personnel at the scene, i.e., there were dogs inside Banta's home that got in the way of the emergency responders. But, here again, Banta offers nothing other than mere speculation as to the need or benefit of any such additional evidence. *McDaniel*, supra at 802 (2).

(g) Lastly, Banta asserts that counsel was deficient for not attempting to introduce into evidence a videotape showing the child walking through the store, and thus her ability to move on her own, earlier on the day of her death. But, Banta acknowledges that there was other evidence of this visit to the store. Such evidence showed that the child appeared uninjured at that time. Indeed, additional evidence of the child's stroll during the time frame in question would not have aided Banta inasmuch as it would belie Banta's implicit

assertion that the child had already endured significant injury prior to being left alone in her care.

There was no error in the trial court's denial of Banta's motion for new trial, as amended, on the ground of ineffective assistance of trial counsel.

*Judgments affirmed. All the Justices concur.*

DECIDED SEPTEMBER 24, 2007.

*Michael A. Corbin*, for appellant.

*Kermit N. McManus, District Attorney, Thurbert E. Baker, Attorney General, Paula K. Smith, Senior Assistant Attorney General*, for appellee.