S07A1283. JACKSON v. THE STATE.
(653 SE2d 28)

HINES, Justice.

Jerry Jermaine Jackson appeals his convictions for malice murder, aggravated assault, and possession of a firearm during the commission of a crime in connection with the fatal shootings of Jamie Sanchez and Guillermo Tamayo, and the wounding of four other men. His sole challenge is to the sufficiency of the evidence of his guilt. For the reasons that follow, we affirm the convictions.[1]

---

[1] The crimes occurred on May 8, 2004. On November 18, 2004, a Cobb County grand jury indicted Jackson, along with Jonathan O'Neal Williams, and Arien Kardale Johnson, for Count 1 – the malice murder of Jamie Sanchez; Count 2 – the malice murder of Guillermo Tamayo; Count 3 – the felony murder of Jamie Sanchez while in the commission of aggravated assault; Count 4 – the felony murder of Guillermo Tamayo while in the commission of aggravated assault; Count 5 – the aggravated assault of Jamie Sanchez; Count 6 – the aggravated assault of Guillermo Tamayo; Count 7 – the aggravated assault of Cerilio Mones; Count 8 – the aggravated assault of Selerio Rodriguez; Count 9 – the aggravated assault of Saldo Cordova;

The evidence, construed in favor of the verdicts, showed that on May 8, 2004, Lisa Marie Lowry went to a "blue house on Frazier Street," known by police as a "drug house," to purchase crack cocaine. While there, Lowry loaned her black Ford F-150 truck to Jackson and Johnson in exchange for crack cocaine. Outside by the truck, Johnson called to his friend Williams, and told Williams that he and Jackson needed Williams to drive them in the truck to Park Street because they were "going to hit a lick," which meant that they were going to rob someone. Jackson and Johnson appeared to be "geeked up" or "high" on cocaine, and each of them carried a black nine-millimeter Glock pistol.

As directed, Williams drove Jackson and Johnson past a home on Park Street, where a group of Hispanic men were gathered, and either Jackson or Johnson told Williams to stop the truck down the street. Earlier, Johnson had driven by the home, saw the men sitting out front, and decided to rob them. Jackson and Johnson walked back to the home with the targeted victims, leaving Williams to circle the block.

Several of the men were in the front yard of the Park Street address drinking beer and talking, while others were inside the home, when Jackson and Johnson appeared. The men saw two African-American men coming towards them, and one of the men in the yard understood that one of the approaching men was cursing in English. Jackson began shooting at the men immediately after reaching the yard. The muzzle flash from his weapon was visible. Jackson and Johnson ran back to the truck, and yelled at Williams to "go, get the hell out of there." Williams drove back towards Frazier Street.

Bonj Hai Choi, an emergency medical technician, and his partner, paramedic Jennifer Johnson, had just finished working their shift and were in a parking lot near Park Street when they heard eight to ten gunshots. One or two minutes later, they saw a black extended-cab truck, with two African-American men in the front,

Count 10 – the aggravated assault of Alberto Vargas; and Count 11 – the aggravated assault of Antonio Zermano. Jackson was also charged separately for possession of a firearm during the commission of a crime in Count 12, as was Johnson in Count 13. Jackson was tried alone before a jury June 6-10, 2005; Williams and Johnson pled guilty and testified for the State at Jackson's trial. Jackson was found guilty of all charges against him, save that in Count 11; the trial court had granted a directed verdict on Count 11, and it was not considered by the jury. Jackson was sentenced on June 10, 2005, to consecutive terms of life in prison on Counts 1 and 2; consecutive terms of twenty years in prison on Counts 7, 8, 9, and 10; and a consecutive term of five years in prison on Count 12. Counts 3 and 4 were vacated by operation of law, and the trial court found that Counts 5 and 6 merged with Counts 1 and 2 for the purpose of sentencing. A motion for new trial was filed on June 13, 2005, and it was denied on April 11, 2006. An amended notice of appeal was filed on May 2, 2006, and the case was docketed in this Court on May 4, 2007. The appeal was submitted for decision on June 25, 2007.

running stop signs and "flying down the road." At trial, Choi recognized a photograph of the white graphic on the truck's tailgate.

Choi went to the crime scene along with Jennifer Johnson and a supervisor. The police had already responded to a 911 call placed shortly after 1:00 a.m. reporting shots fired. The emergency responders found six victims, some of whom were in critical condition. Jamie Sanchez died on the scene within five minutes. Guillermo Tamayo was taken to the hospital, where he died. Cirilio Munez Posata,[2] Selerio Rodriguez, Saldo Cordova, and Filiberto Vargas Loredo[3] were all wounded by the gunfire, with Loredo remaining in a coma for several months.

After the shooting, Jackson and Johnson returned to the "blue house on Frazier Street." There Lowry heard them laughing and talking about shooting the men. Jackson fled to his hometown, Demopolis, Alabama. After receiving a tip about Jackson's location in Demopolis, the police found him at the specified house, hiding in a hallway closet under a pile of laundry.

At the Demopolis Police Department, Jackson saw a newspaper article about the shootings, and commented, "Well, I know my part of that is going to get me 25 years but the other guys are going to hang." Jackson then gave a written statement in which, inter alia, he admitted being at the crime scene, but claimed that he and Johnson and Williams went there to try to get money back from an earlier purchase of powder cocaine which "wasn't any good," that he twice fired a shot, heard gunfire louder than his gunfire coming from behind him, and that there was an "exchange of gunfire." The statement was inconsistent with the evidence at the crime scene.

At trial, Jackson admitted that most of what was in his written statement was a lie. He testified that there had been a drug purchase earlier that evening which occurred in a nearby yard; Johnson was unhappy with the purchase; they parked the black Ford F-150 down the street and returned to the area along with another man; they asked the assembled men for their money back; and after one of the men said that they did not sell drugs, Jackson drew his handgun but did not fire it. Jackson claimed that Johnson shot the victims and then Johnson threw his handgun into bushes behind a blue building on Frazier Street.

The surviving victims testified that they had never seen drugs at the house on Park Street. All of the victims were employed, supporting themselves and their families. There was testimony that they had

---

[2] This victim was identified in the indictment as "Cerilio Mones."

[3] This victim was identified in the indictment as "Alberto" Vargas, the name he sometimes uses.

not seen African-American men at the house that day prior to the shooting. Police officers securing the scene did not see any evidence of drug-related activity.

Jackson contends that the trial court erred in refusing to grant his motion for a new trial because the evidence was insufficient to warrant his convictions. He argues that "regardless of whose version of the facts" was believed, the killings were felony murders, not malice murders, and that no rational trier of fact could have found him guilty beyond a reasonable doubt of the counts of aggravated assault because none of the four wounded men could identify him as the assailant, and testimony from Johnson that Jackson was the shooter was not credible. But, the arguments are unavailing.

It is the jury's province to determine the credibility of the witnesses and to resolve any conflicts in the evidence. *Banta v. State,* 282 Ga. 392 (651 SE2d 21) (2007). Thus, the jury was authorized to accept Johnson's version of events, including that robbery was the initial motive and that Jackson fired the shots that killed and wounded the victims. The fact that conflicts in the evidence may be resolved adversely to a defendant does not render the evidence insufficient. Id.

As to the claim that the killings had to be determined to be felony murders rather than malice murders, it is likewise without merit.

> [I]n Georgia, the crime of malice murder is committed when the evidence shows either an express or, in the alternative, an implied intent to commit an unlawful homicide. This meaning of malice murder is consistent with the general rule that crimes which are defined so as to require that the defendant intentionally cause a forbidden bad result are usually interpreted to cover one who knows that his conduct is substantially certain to cause the result, whether or not he desires the result to occur. Thus, a malice murder can be shown not only by evidence that the defendant acted with the deliberate intention unlawfully to take the life of another human being which is manifested by external circumstances capable of proof, but also by evidence that the defendant acted where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart. In other words, evidence that the defendant acted with implied malice is, for purposes of demonstrating his guilt of the crime of malice murder, no less probative than proof that he acted with a specific intent to kill. Moreover, the malice which is required for murder can be formed in an instant so long as it is present at the time of the act of killing.

(Citations and punctuation omitted.) *Sheffield v. State*, 281 Ga. 33, 35 (2) (635 SE2d 776) (2006). Here, there was ample evidence that Jackson acted with implied malice. Id. The evidence was sufficient to enable a rational trier of fact to find him guilty beyond a reasonable doubt of the malice murders, the aggravated assaults, and possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

The trial court did not err in denying Jackson's motion for a new trial based upon a claim of insufficiency of the evidence.

*Judgments affirmed. All the Justices concur.*

DECIDED NOVEMBER 5, 2007.

*Richard O. Allen*, for appellant.

*Patrick H. Head, District Attorney, Amelia G. Pray, Kathryn E. Cozzo, Dana J. Norman, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Elizabeth A. Harris, Assistant Attorney General*, for appellee.