James HOOD and Metro Atlanta
Taskforce for the Homeless,
Plaintiffs,

v.

Governor George Ervin "Sonny" PER-
DUE, and Attorney General Thur-
bert Baker, Defendants.

Civil Action File No. 1:07–cv–2470–TCB.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 21, 2008.

Frank L. Derrickson, Hollie G. Manheimer, Stuckey & Manheimer, Inc., Decatur, GA, Gerald R. Weber, Atlanta, GA, for Plaintiffs.

Devon Orland, Michelle J. Hirsch, Office of State Attorney General, Atlanta, GA, for Defendants.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This matter is before the Court on Plaintiffs' motion for preliminary injunction and Defendants' motion to dismiss.[1] For the reasons set forth below, the Court denies Plaintiffs' motion for preliminary injunction and grants Defendants' motion to dismiss.

## I. *Background*

### A. *Overview of Plaintiffs' Claims*

On October 9, 2007, Plaintiffs filed this case, in which they seek to mount a facial constitutional challenge to two provisions of Georgia's funeral picketing statute, O.C.G.A. § 16–11–34.2. Plaintiffs allege that subsections (b)(2) and (b)(4) violate the Free Speech and Free Assembly Clauses of the First Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution, as well as Article I, Section I, Paragraph V and Article I, Section I, Paragraph IX of the Georgia Constitution. Plaintiffs also argue that these provisions violate the Due Process Clauses of the Fourteenth Amendment of the United States Constitution and Article I, Section I, Paragraph I of the Georgia Constitution. Plaintiffs seek declaratory relief and injunctive relief as well as nominal and compensatory damages.

In essence, Plaintiffs argue that these two provisions amount to a broad and sweeping ban on all protests and demonstrations within a five hundred-foot radius

---

1. Both parties have also filed motions seeking leave to file briefs in excess of the page limitations set forth in the Local Rules. The Court grants these motions and has considered all of the filings submitted by both parties in connection with this matter.

of a funeral or memorial service,[2] one hour prior to, during, or one hour after a funeral takes place—even where a protest or demonstration neither targets a funeral nor disrupts it.

On October 15, 2007, pursuant to Fed. R.Civ.P. 65, Plaintiffs filed a motion for preliminary injunction to prohibit Defendants from enforcing subsections (b)(2) and (4). Thereafter, Defendants filed their response in opposition to Plaintiffs' motion and also filed a motion to dismiss Plaintiffs' complaint.

### B. *Facts*

Plaintiff James Hood is a resident of Statesboro, Georgia. For the last eighteen years, he has engaged in picketing against public officials of the City of Statesboro and against the officials and banking practices of Sea Island Bank. Hood pickets approximately four days each week. He drives around Statesboro in his car or pickup truck with signs affixed, and upon finding a location promising passers-by or automobile traffic, he parks and pickets next to his car with handheld signs.

Hood does not target funerals when he pickets, but he regularly pickets in areas that are located within five hundred feet of churches and other places where these services are commonly held. He has also picketed at the Georgia State Capitol, which is within five hundred feet of at least two churches, Central Presbyterian Church and Trinity United Methodist Church, where funerals sometimes take place. Hood also pickets on his properties in Statesboro, some of which are located near churches where funerals are held.

Hood states that he intends to engage in similar activities in the future but is concerned that if he pickets in a location near a funeral, he risks arrest and prosecution pursuant to O.C.G.A. §§ 16–11–34.2(b)(2) and (4).

Plaintiff Metro Atlanta Taskforce for the Homeless is an organization dedicated to ending hunger, homelessness and poverty. Every year for the last twenty-seven years, the Taskforce has participated in a rally on the steps of the Georgia State Capitol. The Taskforce also stages demonstrations at Atlanta City Hall and at the King Center, which are also in proximity to churches where funerals are held.

Like Hood, the Taskforce does not target funerals, but many of its protests happen to take place within five hundred feet of places where funerals are commonly held. Like Hood, the Taskforce contends that if one of its rallies were to fall at a time when a church was holding a funeral, its participants would have to forgo their protest activities or risk arrest and prosecution pursuant to the statute.

### C. *Overview of Funeral Picketing Statutes*

Before analyzing the challenged portions of Georgia's funeral picketing statute, it is first helpful to briefly explain the origin and purpose of these laws.

As Professor Stephen R. McAllister explains, funeral picketing statutes were enacted largely in response to the infamous activities of the Westboro Baptist Church. *See* Stephen R. McAllister, *Funeral Picketing Laws and Free Speech*, 55 Kan. L.Rev. 575 (2007). According to the West-

---

**2.** For ease of reading, the Court will hereafter refer to funerals and memorial services col-

lectively as "funerals."

boro Baptist Church, homosexuality is a sin and an abomination, and God is punishing America for this sin by killing Americans, including soldiers in Iraq and Afghanistan. In particular, the church contends that the war in Iraq is God's punishment for the United States's tolerance of homosexual activity. *See* The Westboro Baptist Church homepage, http://www.godhatesfags.com (last visited March 19, 2008).

Members of the church have garnered national media attention and infuriated the American public by targeting funerals, including those of soldiers who have been killed in Iraq, to stage offensive protests. Their protests involve placing on signs or chanting phrases such as "Thank God For Dead Soldiers," "Soldiers Die God Laughs," "Thank God For IEDs," "God Is Your Enemy," "Semper Fi, Semper Fags, coming home in body bags," "Don't Worship The Dead," and "Thank God For 9/11." Outraged by these protests and desiring to protect the privacy of families grieving the death of a loved one, forty states and Congress have enacted laws restricting when and where picketers may demonstrate at funerals.

As a matter of public policy, these laws appear to be fully justified in light of the heinous activities of the Westboro Baptist Church. As a matter of constitutional law, however, these laws have troubled some legal scholars and jurists. *See* McAllister, 55 Kan. L.Rev. at 576. As Professor McAllister states, "[t]he funeral picketing acts raise a new variation on an old theme in the Supreme Court's First Amendment free speech jurisprudence: to what extent may government prohibit or restrict speech that is extremely offensive in a particular setting?" *Id.*

Federal courts in Ohio, Kentucky, and Missouri are currently confronting consti-

tutional challenges to their state's respective funeral picketing statutes, highlighting that this issue is not one that is likely to disappear soon. *See Phelps–Roper v. Nixon*, 509 F.3d 480, 487–88 (8th Cir.2007) (holding that the trial court erred in denying the plaintiff's motion for preliminary injunction, reasoning that the plaintiff has a "fair chance" of proving that Missouri's interest in protecting funeral mourners from unwanted speech is outweighed by the plaintiff's First Amendment rights); *Phelps–Roper v. Taft*, 523 F.Supp.2d 612, 619–20 (N.D.Oh.2007) (holding that the portion of the Ohio funeral statute creating a fixed buffer zone was constitutional but the portion of the statute imposing a floating buffer zone was unconstitutional yet severable); *McQueary v. Stumbo*, 453 F.Supp.2d 975, 995–98 (E.D.Ky.2006) (granting preliminary injunction to the plaintiff upon finding that the plaintiff had demonstrated a likelihood of success in bringing a constitutional challenge to portions of Kentucky's funeral picketing statute).

### D. *Georgia's Funeral Picketing Statute*

With this context in mind, the Court addresses Georgia's funeral picketing statute. Although Plaintiffs only challenge subsections (b)(2) and (4) of the statute, in order to properly interpret these subsections, it is necessary to examine the entire statute, which provides:

> (a) The General Assembly declares that the interest of persons in planning, participating in, and attending a funeral or memorial service for a deceased relative or loved one without unwanted impediment, disruption, disturbance, or interference is a substantial interest and the General Assembly farther recognizes

the need to impose content neutral time, place, and manner restrictions on unwanted acts carried out with the intent to impede, disrupt, disturb, or interfere with such funeral or memorial service.

(b) It shall be unlawful to engage in any disorderly or disruptive conduct with the intent to impede, disrupt, disturb, or interfere with the orderly conduct of any funeral or memorial service or with the normal activities and functions carried on in the facilities or buildings where such funeral or memorial service is taking place. Any or all of the following shall constitute such disorderly or disruptive conduct:

(1) Displaying any visual images that convey fighting words or actual or imminent threats of harm directed to any person or property associated with said funeral or memorial service within 500 feet of the ceremonial site or location being used for the funeral or memorial service at any time one hour prior to, during, or one hour after the posted time for said funeral or memorial service;

(2) Uttering loud, threatening, or abusive language or singing, chanting, whistling, or yelling with or without noise amplification including, but not limited to, bullhorns, automobile horns, and microphones, such as would tend to impede, disrupt, disturb, or interfere with a funeral or memorial service within 500 feet of the ceremonial site or location being used for the funeral or memorial service;

(3) Attempting to block or blocking pedestrian or vehicular access to the ceremonial site or location being used for a funeral or memorial service at any time one hour prior to, during, or

one hour after the posted time for said funeral or memorial service; or

(4) Conducting a public assembly, parade, demonstration, or other like event, either fixed or processional, within 500 feet of the ceremonial site or location being used for a funeral or memorial service at any time one hour prior to, during, or one hour after the posted time for said funeral or memorial service.

(c) Any person who violates any provision of subsection (b) of this Code section shall be guilty of a misdemeanor.

## II. *Discussion*

Defendants raise several arguments in support of their motion to dismiss, including that: (1) Plaintiffs do not have standing to challenge the statute; (2) Plaintiffs have sued the wrong Defendants; (3) nearly all of Plaintiffs' claims against Defendants in their official capacities are barred by the Eleventh Amendment; (4) Plaintiffs' damages claims fail to state a claim against Defendants in their individual capacities, and in the alternative Defendants are entitled to qualified immunity; (5) Plaintiffs' state law claims are barred by the Georgia Tort Claims Act; and (6) even considering the merits of Plaintiffs' claims, the challenged portions of Georgia's funeral picketing statute are constitutional under both the United States and Georgia Constitutions.

While all of Defendants' arguments raise important legal questions, the Court must first address the threshold question of whether Plaintiffs have standing to bring this case. Defendants argue that Plaintiffs do not have standing to challenge subsections (b)(2) and (4) of the statute because they have admitted that they do not intend

to "impede, disrupt, disturb, or interfere" with any funerals. According to Defendants, the statute proscribes only certain disorderly or disruptive conduct that is carried out with an "intent to impede, disturb, or interfere" with a funeral. Plaintiffs interpret the statute differently; they assert it does not have such an intent requirement.

### 1. *Motion to Dismiss Standard*

██ A complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, —— U.S. ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). The allegations in Plaintiffs' complaint are presumed true at this stage, and all reasonable factual inferences must be construed in its favor. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir.1994). However, "the court need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994); *accord Lewis v. Brautigam*, 227 F.2d 124, 127 (5th Cir.1955).[3] To survive a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 127 S.Ct. at 1965.

### 2. *Standing Principles*

██ The Constitution of the United States limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. Art. III, § 2. "[T]he core component of standing is an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 499, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). "In the absence of standing, a court is not free to opine in an advisory capacity about the merits of a plaintiff's claims," *Bochese v. Town of Ponce Inlet*, 405 F.3d 964, 974 (11th Cir.2005), and "the court is powerless to continue." *Univ. of S. Ala. v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999).

██ "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560, 112 S.Ct. 2130. A plaintiff who invokes the jurisdiction of a federal court bears the burden to show "(1) an injury in fact, meaning an injury that is concrete and particularized, and actual or imminent, (2) a causal connection between the injury and the causal conduct, and (3) a likelihood that the injury will be redressed by a favorable decision." *Granite State Outdoor Adver., Inc. v. City of Clearwater*, 351 F.3d 1112, 1116 (11th Cir.2003). Each element is "an indispensable part of the plaintiff's case" and "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." *Lujan*, 504 U.S. at 561, 112 S.Ct. 2130. "An 'injury in

---

**3.** The Eleventh Circuit has adopted as binding precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

*Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

fact' requires the plaintiff to 'show that he personally has suffered some actual or threatened injury.'" *Clearwater*, 351 F.3d at 1117 (emphasis omitted) (quoting *Valley Forge Christian Coll. v. Ams. United for Separation of Church & State*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982)).

Moreover, the overbreadth doctrine, which allows "[l]itigants ... to challenge a statute not because their own rights of free expression are violated, but because of a judicial prediction or assumption that the statute's very existence may cause others not before the court to refrain from constitutionally protected speech or expression," *Broadrick v. Oklahoma*, 413 U.S. 601, 612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973), does not eliminate the threshold requirement that a plaintiff must first establish an actual injury under the statute. *See CAMP Legal Defense Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1271 (11th Cir.2006).

 Thus, the overbreadth doctrine allows a plaintiff who has suffered an injury under a provision of a statute to challenge that provision on facts other than those that apply to the plaintiff. *Id.*; *see also Bischoff v. Osceola County, Fla.*, 222 F.3d 874, 884 (11th Cir.2000). However, the overbreadth doctrine does not relieve a plaintiff of first proving that he "himself has suffered some threatened or actual injury resulting from the putatively illegal action." *Warth*, 422 U.S. at 499, 95 S.Ct. 2197; *see also CAMP,* 451 F.3d at 1273.

 In order for a plaintiff to satisfy the injury in fact requirement in a pre-enforcement challenge to a statute, there must be a realistic danger of the plaintiff's sustaining a direct injury as a result of the enforcement of the statute. *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298, 99 S.Ct. 2301, 60 L.Ed.2d 895 (1979). Abstract harm is insufficient; a plaintiff must establish an actual or threatened injury. *E.F. Hutton & Co. v. Hadley*, 901 F.2d 979, 984 (11th Cir.1990); *Warth*, 422 U.S. at 508, 95 S.Ct. 2197. A plaintiff may carry this burden by showing that either (1) he was threatened with prosecution, (2) prosecution is likely, or (3) there is a credible threat of prosecution. *ACLU v. The Fla. Bar*, 999 F.2d 1486, 1492 (11th Cir.1993). Although a plaintiff need not expose himself to actual arrest or prosecution under the statute, the fear of prosecution must be more than imaginary or speculative. *Babbitt*, 442 U.S. at 298, 99 S.Ct. 2301. "[P]ersons having no fears of state prosecution except those that are imaginary or speculative, are not to be accepted as appropriate plaintiffs." *Id.* (quoting *Younger v. Harris*, 401 U.S. 37, 42, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)).

### 3. *Analysis*

As noted above, Plaintiffs do not have any plans to picket or rally at funerals, nor do they intend in any way to "impede, disrupt, disturb, or interfere" with any funeral. Plaintiffs claim, however, that if they engage in a rally or picket within five hundred feet of a funeral either one hour prior to, during, or one hour after the funeral, then they will be subject to arrest under subsections (b)(2) and (4) the statute.

In support of this argument, Plaintiffs argue that the intent requirement set forth in the first sentence of section (b) is not incorporated into subsections (b)(2) and (4).

For the reasons set forth below, the Court agrees with Defendants that Plaintiffs' interpretation of the statute directly

conflicts with the plain language of the statute and therefore is erroneous.

■ In Georgia, the cardinal rule for the construction of statutes is to ascertain the intent of the General Assembly in enacting the law. O.C.G.A. § 1–3–1(a). Legislative intent must be determined from a consideration of the statute as a whole. *Williams v. Bear's Den, Inc.*, 214 Ga. 240, 242, 104 S.E.2d 230, 232 (1958). "The construction of language and words used in one part of the statute must be in the light of the legislative intent as found in the statute as a whole." *Id.* When construing a statute, no part should be "read out" as "mere surplusage" unless there is a clear reason for doing so, *Porter v. Food Giant, Inc.*, 198 Ga.App. 736, 738, 402 S.E.2d 766, 768 (1991), and all words in the statute are to be given their ordinary meaning, O.C.G.A. § 1–3–1(b). Additionally, "[c]riminal statutes are construed strictly against the State, they must be read according to the natural and obvious import of their language, and their operation should not be limited or extended by application of subtle and forced interpretations." *Perkins v. State*, 277 Ga. 323, 325–26, 588 S.E.2d 719, 721 (2003).

■ Applying these well established rules of statutory construction, it is clear that all subsections of the statute, including subsections (b)(2) and (4), proscribe only certain disorderly or disruptive conduct in which a person engages "with the *intent* to impede, disrupt, disturb, or interfere" with a funeral. O.C.G.A. § 16–11–34.2(b) (emphasis added).

The statute consists of a purpose section that evidences the General Assembly's intent to limit the reach of the statute to "impose content neutral time, place, and manner restrictions on unwanted acts carried out with the *intent* to impede, disrupt, disturb, or interfere with such funeral or memorial service." O.C.G.A. § 16–11–34.2(a) (emphasis added). Thus, at the outset, the statute makes clear that it reaches no further than to target intentional conduct.

The statute's intent requirement is reaffirmed in subsection (b), which makes it unlawful to engage in "any disorderly or disruptive conduct with the *intent* to impede, disrupt, disturb, or interfere with ... any funeral" service. O.C.G.A. § 16–11–34.2(b) (emphasis added). Subsection (b) goes on to provide that "[a]ny or all of the following shall constitute such disorderly or disruptive conduct," meaning that subsections (b)(1) through (4) provide four specific examples of activities that constitute "such disorderly or disruptive conduct." However, that subsections (b)(1) through (4) provide examples of "disorderly or disruptive conduct" does not alter the fact that subsection (b) imposes an overarching requirement that the "disorderly or disruptive" conduct must be carried out "with the intent to impede, disturb, or interfere" a funeral.

Notwithstanding the fact that the plain language of the statute severely undercuts Plaintiffs' argument, Plaintiffs maintain that their interpretation of Georgia's statute is supported by the decisions of other courts that have analyzed other states' funeral picketing statutes, including *Phelps–Roper v. Nixon*, 509 F.3d 480 (8th Cir. 2007); *Phelps–Roper v. Taft*, 523 F.Supp.2d 612 (N.D.Oh.2007); and *McQueary v. Stumbo*, 453 F.Supp.2d 975 (E.D.Ky.2006). Plaintiffs' reliance upon these cases is misplaced because although the funeral picketing statutes in those states may have goals similar to that of Georgia's statute, they have markedly dif-

ferent provisions. In both *McQueary* and *Nixon*, the challenged portions of the funeral picketing statutes in question did not have any intent requirement. And while it is true that the challenged portion of the statute in *Taft* did contain a intent requirement, the issue of standing was never raised because it was undisputed that the plaintiff in that case, as a member of the Westboro Baptist Church, clearly intended to disrupt funerals.

Thus, while these other decisions might be instructive if the Court were to reach the question of the constitutionality *vel non* of Georgia's funeral picketing statute, they are not helpful in interpreting the words of the Georgia statute.

Plaintiffs next argue that even if Defendants are correct that subsections (b)(2) and (4) contain an intent requirement, the statute can still be violated in the absence of an actual intent to disrupt a funeral. Specifically, Plaintiffs assert that "intent" under Georgia criminal law means "substantial certainty," and therefore the statute can be violated if one engages in "any disorderly or disruptive conduct" that he or she knows is "substantially certain" to disrupt a funeral.

To support this argument, Plaintiffs rely upon *Sheffield v. State*, 281 Ga. 33, 635 S.E.2d 776 (2006), and *Jackson v. State*, 282 Ga. 668, 653 S.E.2d 28 (2007), in which the Georgia Supreme Court noted that "crimes which are defined so as to require that the defendant intentionally cause a forbidden bad result are usually interpreted to cover one who knows that his conduct is substantially certain to cause the result, whether or not he desires the result to occur."

There are two problems with Plaintiffs' reliance upon these cases. First, *Sheffield*

and *Jackson* are factually inapposite in that they both addressed whether there was sufficient evidence to support a defendant's conviction for malice murder. Under Georgia law, a person commits the offense of murder "when he unlawfully and with malice aforethought, either *express or implied*, causes the death of another human being." O.C.G.A. § 16–5–1(a) (emphasis added). In both *Sheffield* and *Jackson*, the defendants argued that while the evidence was sufficient to show that they committed a homicide, it was insufficient to show that they intended to murder the victim. In each case the Georgia Supreme Court held that an implied intent to murder can be established when the circumstances of the killing show an abandoned and malignant heart. *Sheffield*, 281 Ga. at 35, 635 S.E.2d at 779; *Jackson*, 282 Ga. at 671–72, 653 S.E.2d at 30–31.

Unlike Georgia's murder statute, there is no implied intent provision in Georgia's funeral picketing statute. Consequently, it is unclear whether Georgia's funeral picketing statute may be violated in the absence of actual intent.

Second, even if the substantial certainty standard does apply here, Plaintiffs have not satisfied it. Just because Plaintiffs plan to engage in protests that may be in proximity to funerals does not mean that Plaintiffs know that that their conduct is substantially certain to impede, disrupt, disturb, or interfere with a funeral. Plaintiffs concede that they do not intend to target funerals with their protests and that they do not wish to disrupt any funerals. Indeed, Plaintiffs admit that they do not protest against any persons or organizations that might hold or administer a funeral. These concessions eliminate any reasonable argument that Plaintiffs have the requisite mens rea to violate subsec-

tions (b)(2) and (4) of the statutes.[4]

In sum, subsections (b)(2) and (4) of Georgia's funeral picketing statute are violated only when the disorderly or disruptive conduct is committed with "the intent to impede, disrupt, disturb, or interfere" with a funeral service. Conduct that unintentionally, accidentally, or negligently disrupts a funeral does not violate the statute.

 The fact that Plaintiffs' case rests upon a faulty interpretation of the statute has serious consequences. Because Plaintiffs admit that they do not have any intent to "impede, disrupt, disturb, or interfere" with any funerals, Plaintiffs have no real risk of being prosecuted under subsections (b)(2) or (4) of the statute. Moreover, Plaintiffs do not allege that they have been threatened with arrest as a result of their planned activities, nor do they allege that they have been informed that the statute will be interpreted in such as a manner so as to prohibit their planned activities. At bottom, Plaintiffs' claimed injury arises from a mistaken view of the statute's reach. As a result, Plaintiffs' alleged fear of prosecution is illusory, and they lack standing to pursue this case.

### III. *Conclusion*

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss [14]; GRANTS Defendants' motions for leave to file excess pages [12 & 18]; GRANTS Plaintiffs' motion for leave to file excess pages [15]; and DENIES Plaintiffs' motion for preliminary injunction [3]. The CLERK is DIRECTED to close this case.

---

4. Furthermore, the Court's interpretation of the statute is consistent with other areas of Georgia law. For example, Georgia law prohibits the making of telephone calls for the purpose of harassing another person. O.C.G.A. § 16–11–39.1. In *Constantino v. State*, 243 Ga. 595, 598, 255 S.E.2d 710, 713 (1979), the defendant challenged his conviction under a predecessor statute, arguing that "what is or is not harassing, annoying, or bothersome is merely a question of one's own interpretation." In rejecting this argument, the court stated, "The fallacy in this theory is that the victim's subjective ideas on what is or is not harassing are not at in issue. The point is that the defendant telephones *intending* to harass and the defendant certainly knows if he is doing that." *Id.* (emphasis added); *see also Johnson v. State*, 264 Ga. 590, 591, 449 S.E.2d 94, 96 (1994) (holding that Georgia's stalking statute was expressly limited to a "knowing and willful" course of harassment and intimidation).